*J. W. Gordon,* for appellant.

---

### ROOT *v.* STEVENSON'S ADMINISTRATOR.

24b 115
137 672

24 115
Case 3
d164 600

ARMY REGULATIONS.—The army regulations are, by the act of Congress of August 23, 1842, made the law of the land. Page 118.

CONTRACT AGAINST GOOD MORALS—INFANCY.—A and B entered into a partnership with C, who was an assistant quartermaster of the United States, by which they were to furnish forage for the use of the army, which was to be purchased of the firm, and inspected and received by C, as such quartermaster. At a settlement of the business, the profits of each partner being $1300, B, in whose hands they were, paid over to C the share of A, to be delivered to him by C. Suit by A, alleging a conversion of the money by C.

*Held*, that, as the contract was in contravention of good morals, and based on the corruption of a public officer, the court cannot lend its aid to enforce it, but must leave the parties as it found them.

*Held*, also, that the corruption of the transaction still tainted the fund in the hands of C, though the partnership business had been closed, and A's action to recover it cannot be sustained.

*Held*, also, that a plea of infancy by C was good, as the bailment was of money generally, and not of specific bills or coins, and the failure to pay over was only a non-feasance.

APPEAL from the *Marion* Common Pleas.

GREGORY, J.—*Deloss Root* sued *Columbus S. Stevenson*, administrator of the estate of *Richard Stevenson*, deceased, for $1300. There were two paragraphs in his complaint. The first was for money had and received by the intestate for the use of the plaintiff, and money loaned by the plaintiff to the decedent. The second charges that, in the summer of 1862, the plaintiff, said *Richard*, and one *Cheatham*, entered into an agreement to purchase supplies for the federal army at Nashville, for a limited time, by which *Cheatham* was to make the purchases, keep and pay out the moneys used in the business, and when the same expired, to settle the liabilities and divide the net profits equally between the three, and pay over to each his separate share of the same. That the joint undertaking was carried on until the 6th of *September*, 1862, when the same was terminated, and *Cheatham*, after settling the liabilities, had left as profits $3900, which he divided into equal portions, giving to each of the partners $1300, and which sum of $1300 belonging to the plaintiff, and $1300 belonging to said *Richard*, he then had and held in his hands as the separate property of each, and so having and holding the same, he did pay over to said *Richard* the $1300 belonging to, and the separate property of, said *Richard*, and did also deliver over and pay to said *Richard* the $1300 which he, *Cheatham*, had in his hands as the separate property of the plaintiff, and which last mentioned money said *Richard* received as the separate property of the plaintiff, to be by the former paid over and delivered to the latter; but said *Richard*

did not pay nor deliver the money, nor any part thereof, to the plaintiff, but so to do wholly failed, and *wrongfully converted* the same, and every part thereof, to his own use. That at the time the agreement was entered into, and at the time the money of the plaintiff was paid over and delivered to said *Richard,* for the purpose aforesaid, the said *Richard* was a minor, under the age of twenty-one years, to-wit, of the age of twenty years, of which fact the plaintiff was wholly ignorant at and during the time; and that defendant, administrator, &c., has not since the death of the said *Richard* paid the money, nor any part thereof, to the plaintiff, although often specially requested, before the commencement of this suit.

The defendant's demurrer to the second paragraph of the complaint was overruled, and he excepted.

The defendant answered each paragraph of the complaint separately: 1st, general denial; 2d, infancy; 3d, that *decedent, Root* and *Cheatham* were partners in purchasing supplies for the government; that *Stevenson,* the decedent, was at the time assistant quartermaster in the army of the United States, and purchased of the firm, inspected and received the supplies, as such quartermaster, and that the $1300 sued for by *Root* was his share of the profits.

The plaintiff demurred separately to the second and third paragraphs of the answer to each paragraph of the complaint; his demurrers were overruled, and he excepted. The plaintiff replied to the second and third paragraphs of the answer to the first paragraph of the complaint: 1st. General denial. 2d. That at the time the said *Richard* received the money of the plaintiff, the partnership was closed, and that *Cheatham* delivered the money as the separate property of the plaintiff to said *Richard,* for the use of, and to be by him paid over to, the plaintiff, and the same was so received by said *Richard* for such purpose, who, at the time, and for a long time before, had been doing business for himself, and was not known to be a minor by the plaintiff, or by *Cheatham.* 3d. The same as the 2d, omitting the averments relating to

the minority of the decedent. 4th. The same as the 3d, with the additional averment that the partnership was limited to a single transaction.

The court sustained separate demurrers to the 2d, 3d and 4th paragraphs of the reply, and the plaintiff excepted.

The plaintiff withdrew the 1st paragraph of his reply, refusing to reply further, and the court rendered final judgment against him. He appeals to this court.

The answer shows that the plaintiff entered into partnership with *Cheatham* and the defendant's intestate, who was at the time assistant quartermaster at *Nashville, Tennessee,* to purchase forage for the army. The forage purchased by the partnership was purchased from the firm, inspected and received by the deceased, as such assistant quartermaster. The reply shows that the net profits of the adventure were $3900, which, after the termination of the partnership, *Cheatham* divided into three equal parts, and delivered and paid over to the decedent $2600, one-half of which he was to pay over to the plaintiff. It is not shown that the plaintiff was a party to the settlement, or consented thereto, except by the bringing of this action. Can the plaintiff recover the $1300 so placed in the hands of the deceased?

It is provided by the Army Regulations that "No officer disbursing, or directing the disbursement, of money for the military service, shall be concerned, directly or indirectly, in the purchase or sale, for commercial purposes, of any article intended for, making a part of, or appertaining to the department of the public service in which he is engaged, nor shall take, receive or apply to his own use any gain or emolument, under the guise of presents or otherwise, for negotiating or transacting any public business, other than what is or may be allowed by law." §1000. The Army Regulations are by the act of Congress of the 23d of *August,* 1842, made the law of the land. See also *Gratiot* v. *United States,* 4 Howard, 80.

A contract was made for rebuilding *Fort Washington* by M, a deputy quartermaster-general, with B, in the profits of

which M was to participate. False measures of the work were attempted to be imposed on the government, the success of which was prevented by the vigilance of the accounting officers of the treasury. A bill was filed to compel an alleged partner in the contract to account for and pay, to one of the partners in the transaction, one-half of the loss sustained in the execution of the contract. It was held, that to state such a case was to decide it. "Public morals, public justice, and the well established priciples of all judicial tribunals, alike forbid the interposition of courts of justice to lend their aid to purposes like this. To enforce a contract which began with the corruption of a public officer, and progressed in the practice of known willful deception in its execution, can never be approved or sanctioned by any court." *Bartle* v. *Nutt*, 4 Peters, 184.

"The law leaves the parties to such a contract as it found them. If either has sustained a loss by the bad faith of the *particeps criminis*, it is but a just infliction for premeditated and deeply practised fraud. He must not expect that a judicial tribunal will degrade itself by an exertion of its powers to shift the loss from one to another, or to equalize the benefits or burdens which may have resulted from the violation of every principle of morals and of law." *Ibid.*

We are inclined to think that the only difference between that case and the one at bar, consists in a fact which would have alone received the condemnation of a Spartan, the *detection* and not the *commission* of the crime.

But it is claimed that the illegal partnership had terminated; that the contract of bailment was a new one, based on a new consideration, and therefore not tainted with the illegality.

This position cannot be maintained. *Root* had never, in any legal sense, received his share of the ill gotten gains. *Stevenson* was not his agent in the receipt of the money. *Cheatham's* obligation was to divide and pay over. This bailment was resorted to as the very means of performing his obligation under the partnership agreement. By the want

of good faith in one, in equal guilt with himself, he is sub-jected to a loss of the identical thing which he had acquired by a violation of every moral principle. The law, be it said to its credit, leaves the guilty man where it finds him.

The rule on this subject is thus stated in the case of *Armstrong* v. *Toler*, 11 Wheaton, 258 : " I understand the rule, as now clearly settled, to be, that where the contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to en-force it. And if the contract be in part only connected with the illegal transaction, and growing immediately out of it, though it be, in fact, a new contract, it is equally tainted by it." This ruling received the approbation of Chief Justice MARSHALL, and is sustained in the case of *Steers* v. *Lashley*, 6 Term Rep. 61, and *Booth* v. *Hodgson, Ibid.* 405.

The defense of infancy becomes immaterial, there being nothing to defend against.

It may, however, be remarked, that the only point of any importance on this branch of the case, arises on the answer of infancy to the 2d paragraph of the complaint. It is con-tended that infancy is not a good defense to that paragraph, because a "wrongful conversion" of money is charged; and while it is admitted that there was a contract of bailment with the infant, it is insisted that the conversion of the money was outside of his duty as bailee, and rendered him liable for the *tort*, and the case of *Towne* v. *Wiley*, 23 Vermont, 355, is cited, in which it is held that "when property is bailed to an infant, his infancy is a protection to him for any non-feasance, so long as he keeps within the terms of the bail-ment. But when he *departs from the object* of the bailment, it amounts to a conversion of the property, and he is liable to the same extent as if he had taken the property in the first instance without permission." In that case the infant hired a horse for the purpose of going to B, and returning the same day. He went to B, but returned by a circuitous route, which nearly doubled the distance, and stopped at a house upon the way, leaving the horse without food or

shelter from 8 o'clock in the evening until 4 o'clock the next morning, and did not return until 8 o'clock the next morning, and from this over driving and exposure the horse died.

The bailment in the case in judgment was of money generally, and not of any particular coin, money in a bag, or specific bills. The infant could have discharged himself by paying the plaintiff $1300, without delivering the specific money bailed. Proof on the trial of a demand and refusal to pay, would have sustained the allegation, and, after all, the averment in this particular case amounts to nothing more than a non-feasance, for which infancy is a protection. The rulings of the court below were right.

The judgment is affirmed, with costs against the appellant.

*N. B. Taylor*, for appellant.

*Rand & Hall*, for appellee.