Filed June 26, 1889.

---

No. 13,365.

## DAVIS ET AL. *v.* DAVIS.

PROMISSORY NOTE.—*Indemnity.—Loss Essential to Liability.*—A promissory note which is executed merely to indemnify the payee against loss for money advanced for the maker as margins in a joint transaction by the parties in grain, is not enforceable by the payee if no loss occurs.

SAME.—*Transaction in Grain.—Retention by Payee of Maker's Profits.*—Where, in a joint transaction in grain, one party advances for the other the amount of money necessary to make the purchase, and takes the latter's note to indemnify him against loss, it being agreed that in case of a profit the payee shall collect the maker's share and apply it upon the note, the note is not enforceable by the payee if the maker's share of the profits collected and retained by him is equal to the amount due on the note.

SAME.—*Sale of Commodity.—Margins.—Gambling Contract.*—Where it is mutually understood and intended by all the parties to a contract that the commodity said to be sold is neither to be delivered nor paid for, but the contract is to be settled by the seller or purchaser, according as the market shall decline or advance, paying the difference between the contract price and the market price, such contract is a gambling contract and void, and a promissory note executed in the course of such a trans-

action to indemnify the payee against loss for money advanced for the maker as margins, is not enforceable by the payee.

SAME.—*Pleading.—Reply.*—In an action by the payee upon a promissory note which the defendant asserts (1) was given to indemnify the plaintiff against loss for money advanced in a transaction in grain, which had resulted profitably, and that the defendant's share of the profits, which the plaintiff had collected and retained, amounted to more than the note, and (2) that the note evidences money advanced by the plaintiff for the defendant in a gambling transaction in grain, a reply that the note was given for money loaned, that the transaction in grain was subsequent to and wholly unconnected with the execution of the note, and that the plaintiff had accounted to the defendant for all profits accruing to him in said transaction, is good.

SAME.—*Settlement.*—A settlement prior to the maturity of a note of all other business matters between the maker and payee, can not make the note enforceable if it is void as being the outgrowth of an illegal gaming contract.

From the Bartholomew Circuit Court.

*M. Hacker, W. T. Strickland* and *J. B. Reeves,* for appellants.
*W. F. Norton* and *S. W. Smith,* for appellee.

COFFEY, J.—This was an action brought by the appellee in the circuit court against the appellants upon a promissory note. The complaint is in the usual form. The appellant Jacob Davis answered separately in seven paragraphs.

The first paragraph of the answer avers that appellant Jacob Davis is the principal in said note, and that the other appellant is only surety; that, about the time of the execution of the note in suit, the plaintiff and the defendant had a deal in what is known as options or margins with one Mc-Kee, and in said transaction plaintiff and defendant agreed to and did purchase together a large quantity of oats, with the understanding and agreement that said plaintiff and this defendant should share equally in the profits and losses of said transaction; that it was required by said McKee that a certain amount of money be advanced by plaintiff and defendant upon said purchase; that this defendant was unable to furnish his part of said money, and it was then agreed between them that plaintiff would advance for the defendant

the sum necessary to be put up by him, and take this defendant's note therefor, with Fremont Davis as surety thereon; that, pursuant to said agreement, plaintiff did advance for this defendant said money, with the agreement then made by and between them that said note should be for indemnity and to secure the plaintiff against loss by reason of said transaction, in case said parties suffered loss by reason of decline in said oats purchased as aforesaid, and with the agreement that if there should be no loss then said note should not be enforced or payable, and that said note was executed pursuant to said agreement and understanding; that there was no loss on said transaction, but, on the contrary, when said oats were sold there was a net profit thereon in the sum of $1,500, this defendant's portion thereof being $750; that the plaintiff collected the entire sum realized as profits on said oats deal, including the portion due this defendant, and retained, and still retains, the same.

The second paragraph avers that plaintiff and defendant purchased a large quantity of oats of one McKee, to hold the same as a speculation and venture, and to share equally the profits and losses thereon; that it became necessary in order to perfect said purchase and bind the bargain to advance a sum of money on said purchase; that defendant was unable to advance the sum of money required of him, and thereupon the plaintiff advanced the whole sum required; that, to reimburse the plaintiff in case of loss, the defendant executed to him the note in suit for $300, with his co-defendant as surety thereon; that, in case of a profit on said purchase to such an amount accruing to this defendant as equalled said note, it was agreed that plaintiff should collect the same and apply it to the satisfaction of said note, and to pay the defendant the residue of said profits if any such residue existed; that a net profit of $1,400 was realized on said purchase; that the plaintiff collected said profits, and retained, and still retains, the same; that the share of de-

fendant exceeds the amount due on said note, and that plaintiff has never paid the defendant any part of the same.

The third paragraph of the answer is substantially the same as the first.

The fourth paragraph avers that the note in suit was given without any consideration.

The fifth paragraph is a plea of payment.

The sixth paragraph avers that about the time said note was executed, plaintiff and defendant had a deal in what is known as " options, margins or futures " ; that they entered into an agreement to purchase together, in the name of the plaintiff alone, a large quantity of oats, with the understanding and agreement that said plaintiff and defendant should share equally in the profits and losses in said transaction ; that, said transaction being carried on in the name of the plaintiff alone, it was required by McKee & Co., with whom plaintiff and defendant were dealing, that plaintiff should advance the sum of six hundred dollars as a margin to protect said deal ; that said note was executed to secure the said plaintiff from loss on account of his advancement and payment of defendant's half of said sum ; that it was agreed between plaintiff and defendant that in the event no loss should be sustained by the plaintiff in said deal, then the defendant should not pay said note ; that it was the rule of said McKee & Co. that in case of loss to parties dealing in options, futures or margins, the loss would never be greater than the amount of margins put up by the parties so dealing, and in case of profit to parties so dealing, the amount of the margins so put up was returned with the amount of the profits ; that plaintiff did advance six hundred dollars as the margins on said oats deal; that there was a profit in said deal in the 'sum of fifteen hundred dollars, seven hundred and fifty dollars of which belonged to the defendant; that the plaintiff collected the whole amount thereof and retained and still retains the same.

The seventh paragraph avers that at the time of the ex-

ecution of said note one Mel. McKee, under the name and style of McKee & Co., was operating in Columbus, Indiana, a place or institution commonly called a "bucket-shop," by and through which parties speculated in grain, such as wheat, oats, corn, and other things, such as hogs and lard, on what is commonly called margins, options or futures, by which parties gamed upon the future price of articles, and paid or secured at a future day the difference between the price of the article then and at the date of the contract; that at said time the plaintiff and this defendant were partners in an oats deal with and through the said McKee & Co., the said deal being made in the name of the plaintiff alone, the plaintiff and this defendant to share equally the profits and losses; that by and through the said McKee & Co. the said plaintiff at said time made an option contract for 30,000 bushels of oats for the plaintiff and this defendant; that the purchase-price of said oats was not paid, and it was not intended by any of the parties to said contract that the purchase-price thereof should be paid by the plaintiff and defendant, or either of them; that said oats were never delivered to the plaintiff, or to any one, by his authority, and it was not the intention of any of the parties to said contract that said oats should be delivered; that it was a venture or speculation upon the future price of oats, to be settled by paying or receiving at a future day the difference between the price of oats then and at the date of the contract; that the said McKee & Co. required of the plaintiff the sum of $600 as a margin to protect the said deal, and the said plaintiff paid the said sum of $600 as a margin on said deal, and took the note in suit for the defendant's one-half thereof to indemnify him in case of loss; that the said sum of $300, the consideration of said note, was used by the plaintiff as an advancement of a margin to keep the payment of the difference in the price of oats under said contract secure, and for no other purpose; that said deal in oats, or option contract, was a gambling contract, contrary to public policy, illegal and

void, and said note is illegal and void, and plaintiff ought not to recover thereon.

The court, on motion of the appellee, struck out the third and sixth paragraphs of the answer of the appellant Jacob Davis, and he excepted. The court also overruled a demurrer to the first, second, fourth, fifth and seventh paragraphs of said answer.

The court also overruled a demurrer to the fourth, seventh and eighth paragraphs of the reply, to which appellant excepted. Said paragraphs are substantially as follows :

4th. That the note in suit was, on the day it bears date, executed by the defendants to the plaintiff for loaned money in the sum of $300, at the defendants' special instance and request, wholly unconnected with and separate and apart from any and all other agreements and understandings whatever ; that subsequent to the execution of said note, and wholly unconnected therewith, the plaintiff and the defendant Jacob Davis did enter into the subsequent, distinct and separate agreement and understanding, wholly unconnected with the execution of said note, by the terms of which this plaintiff and said Jacob Davis did have and carry on a deal in what is and was known as options, margins, or futures in oats, with one Mel. McKee, in the city of Columbus, Indiana ; that as a result of such deal, each paying one-half the purchase price, and each to share equally, there was a net profit, one-half of which, together with one-half the original purchase-money, was, prior to the maturity of the note in suit, fully paid to and received by the said Jacob Davis, leaving the note in suit wholly unpaid.

7th. For further and seventh paragraph of reply to the separate answer of the defendant Jacob Davis, the plaintiff says that heretofore, to wit, on or about June 16th, 1879, and prior to the maturity of the note in suit, this plaintiff and said Jacob Davis had a partial settlement and adjustment between them of all the accounts, demands and claims

then existing between them, except the note in suit, which was then not due, and remained unpaid, and was due prior to the commencement of this suit ; that at the time of said partial settlement all the facts were before them, and well understood by each of them, necessary to said partial settlement.

8th.   For further and eighth reply to said answer, plaintiff says that on the 16th day of June, 1879, the plaintiff and said defendant, having then and there all the necessary facts before them, and well understood by each, had and made a full and final settlement of their business affairs and prior transactions, including each and all claims, accounts and demands whatever then existing between them, except the note in suit, which was not then due, and remained unpaid and unaffected by said settlement ; that plaintiff owed said defendant nothing whatever, and said defendant still owed the plaintiff the note in suit, which still remains due and unpaid.

A trial of the cause resulted in a verdict and judgment for the appellee, for the full amount of the note in suit.   The assignment of errors calls in question the correctness of the rulings above set out, as well as the sufficiency of the complaint as a cause of action.   We think the complaint states a good cause of action against both the appellants.

We do not think the court erred in striking out the third and sixth paragraphs of the answer.   All matters contained in these answers could be given in evidence under the answers still remaining, and the third and sixth only encumbered the record.

The first, second, fourth, fifth and seventh paragraphs of the answer each state a good defence to the complaint.   The seventh paragraph avers matters which, if true, render the note in suit void.   In the case of *Whitesides* v. *Hunt*, 97 Ind. 191, it is said that the correct rule is, that where a commodity is bought for future delivery, no matter what the contract is, the law regards the substance and not the shadow, and if the parties mutually understood and in-

tended that the purchaser should pay for, and the seller
should deliver the commodity at the maturity of the contract,
it is a legal and valid transaction, and the fact that the pur-
chaser is required to deposit a margin, and increase the same
at any time the market requires it, in order to secure the pay-
ment at maturity, or that the seller shall deposit a margin,
and increase the same like the purchaser, in order to secure
the delivery at maturity, does not vitiate the contract.    But
if at the time of the contract it is mutually understood and
intended by all the parties, whether expressed or not, that
the commodity said to be sold was not to be paid for, nor to
be delivered, but the contract was to be settled and adjusted
by the payment of difference in price—if the price should
decline, the purchaser paying the difference ; if it should
rise, the seller paying the advance, the contract price being
the basis upon which to calculate a difference—in such case it
would be a gambling contract and void.    The same princi-
ple is decided in the case of *Sondheim* v. *Gilbert*, 117
Ind. 71.    Indeed, the rule here stated is believed to be
universal, and our attention has not been called to any adju-
dicated case where a contrary doctrine has been announced.
Where parties enter into such illegal contracts the courts will
leave them where they have placed themselves, and will give
them no aid.    *Judah* v. *Trustees, etc.*, 23 Ind. 272 ; *Root* v.
*Stevenson*, 24 Ind. 115 ; *Dumont* v. *Dufore*, 27 Ind. 263.

The fourth paragraph of the reply we think is good.    It
inferentially, at least, denies the allegations contained in the
seventh paragraph of the answer, while it avoids the matters
averred in the others.

The seventh and eighth paragraphs of the reply purport
to answer the allegations contained in the whole answer.
They constitute no sufficient reply to the seventh paragraph
of the appellant's answer.    We are not able to see how the
settlement of all matters of business between the parties, ex-
cept the note in suit, could give it validity if it was void as
being the result and outgrowth of an illegal gaming con-

tract. In fact, these paragraphs, while attempting to reply to the whole answer, utterly ignore the seventh paragraph. They are wholly insufficient to avoid the defence therein set out, and the court erred in overruling a demurrer thereto.

The appellants also complain of the action of the court in refusing to require the appellee to answer further interrogatories. The appellants propounded a number of interrogatories to appellee, which had been answered. The court was under no obligation to permit the appellants to file other interrogatories, and require an answer thereto. They should have filed these interrogatories with the others, if they desired them answered.

We do not think the court erred in striking out the second, third, fifth, and sixth paragraphs of the reply. All matters contained therein could have been given in evidence under the general denial, which was pleaded.

Other questions are discussed by counsel in their briefs, but as they may not arise again on another trial of this cause we do not decide them.

Judgment reversed, with instructions to sustain the demurrer to the seventh and eighth paragraphs of the reply, and for further proceedings not inconsistent with this opinion.

Filed June 27, 1889.