Filed Feb. 19, 1895.

———————◆———————

## No. 1,360.

### NAVE ET AL. *v.* WILSON.

CONTRACT.—*Futures.—Margins.—Public Policy.*—If, under the guise of a contract which has the appearance of validity upon its face, the real intention is merely to speculate on the rise and fall of the market, without any purpose that any property shall be delivered or received, but with the understanding that at the appointed time the account is to be adjusted by paying or receiving the difference between the contract and the current price, the entire contract is illegal, as against public policy, and falls under the condemnation of the law.

AGENT.—*Illegal Contract.—Right of Agent to Set Up Illegality.—When He May or May Not Do So.*—If A and B enter into a wagering contract, and B pays the wager to C, who is not connected with the original illegal transaction to deliver to A, A can recover the money in an action against C; but if A authorizes C to enter into a wagering contract for his benefit, with authority to collect and account to him for the winnings, and C enters into such contract in his own name with B, and the wager is paid by B to C, A can not recover the money in an action against C.

PRACTICE.—*Demurrer to Answer.—Assigning the Demurrer to Complaint was Erroneously Overruled.*—Where a demurrer addressed to an answer has been overruled, assigning as error that the court erred in overruling the demurrer to the complaint presents no question concerning the sufficiency of the answer.

From the Fountain Circuit Court.

*I. E. Schoonover, A. Schoonover, J. McCabe* and *E. F. McCabe,* for appellants.

*A. A. Rice, W. S. Potter, B. K. Elliott* and *W. F. Elliott,* for appellee.

Davis, J.—On the 2d of September, 1891, the appellee commenced this action against appellants on a note executed by appellants to appellee on the 11th day of October, 1882. The appellants answered in two paragraphs.

The first paragraph is a general denial.

The second paragraph is as follows:

"The defendants, for further answer to plaintiff's complaint, allege that at the date of the execution of the note sued on herein and for more than one year previous thereto, the defendants, under the firm name and style of Nave, Allen & Co., were engaged in a general grain and warehouse business in Attica, Indiana, and were also engaged in speculating in grain, such as wheat, oats, corn and other things, on what is commonly called margins, options or futures, by which they gamed upon the future price of such articles, and paid, or secured at a future day, the difference between the price of the article then and at the date of the contract, of which last named business, and the character thereof, the plaintiff well knew, and, with such knowledge, engaged with defendants, the said Nave, Allen & Co., to make deals of said character for him, plaintiff, in the name of said Nave, Allen & Co.; that the said Nave, Allen & Co., in pursuance of said engagement, and under the authority and direction of plaintiff, made numerous deals or trades of the character aforesaid, for plaintiff, with parties operating upon the board of trade in the city of Toledo, Ohio; that said transactions continued from the 17th day of February to the 11th day of October, 1882, the said Nave, Allen & Co., during said period of time, mak-

ing pretended purchases and sales of grain through said board of trade, for plaintiff, as aforesad; that for the purpose of aiding said Nave, Allen & Co. in carrying on said transactions, for plaintiff, as aforesaid, plaintiff, from time to time, paid the said Nave, Allen & Co. sums of money aggregating $700, which money was to be and was used as margins on said pretended sales and purchases; that at the time of the making of all and each and every of said pretended sales and purchases, contracts and transactions it was mutually understood and intended, by all the parties to said pretended sales and purchases, contracts and transactions, and by the plaintiff, that the grain with reference to which said pretended sales and purchases, contracts and transactions were made, was not to be paid for nor to be delivered, but the contract was to be settled and adjusted by the payment of the difference in price at the date of making such contracts, and the adjustment and settlement of the same; if the price should decline, the purchaser was to pay the difference; if it should rise the seller was to pay the advance; the contract price being simply the basis upon which to calculate the difference.

On the 11th day of October, 1882, all of said transaction having been closed, settled and adjusted in manner and form agreed upon as aforesaid, and none of said grain having been paid for nor delivered, the plaintiff and the said Nave, Allen & Co. had an accounting between themselves with reference to said speculating contracts and transactions, as aforesaid, and it was found that upon the basis, estimates and calculations agreed upon and understood by them, as aforesaid, and the allowance to said Nave, Allen & Co., of one-fourth of one per cent. as their compensation for transacting said business, as aforesaid, and which had been agreed upon at the time of making said pretended sales and purchases,

contracts and transactions, that there was due plaintiff, growing out of said transactions, as aforesaid, the sum of two thousand and sixty-two dollars and fifty cents, for which sum the said Nave, Allen & Co. executed the note sued on herein, but for no other or further consideration whatever than on account of said pretended sales and purchases, contracts and transactions, as aforesaid. Wherefore defendants demand judgment for costs and all other proper relief.''

The demurrer of appellee to this paragraph was overruled and a reply of general denial filed. A trial by jury resulted in a verdict for appellee for $2,675.

Appellant's motion for a new trial was overruled and thereupon judgment was rendered on the verdict.

The error assigned by appellants is : That the court erred in overruling appellant's motion for a new trial.

The only cross-error assigned by appellee is :

'' The court erred in overruling the demurrer to the complaint.''

Through inadvertency, counsel have evidently made a mistake in the assignment of the cross-error. There was no demurrer to the complaint. The only adverse ruling against appellee was the overruling of the demurrer to the second paragraph of the answer. The only question, therefore, presented for our consideration arises on the error assigned by appellants.

It is earnestly contended by counsel for the appellants that the verdict of the jury is not sustained by the evidence.

We have carefully read the evidence, in the light of the argument of counsel, and can not escape the conclusion that it proves in substance and without conflict the material averments contained in the answer. It clearly appears that appellee started out with the intention of gambling on the price of grain, and employed appel-

lants as instruments through which to accomplish his designs; that the deals were what are known among grain speculators as option deals or deals on margins, and that the transactions in this case did not contemplate any actual delivery of the grain, and that appellee had the right, without delivery of the grain, to close the respective deals at any time, and when a deal was closed the difference in the cost price and the selling price was either deducted or credited to appellee's account, whichever side the difference was on. No arrangement was made between appellants and appellee as to whose name should be used in making the deals, nor with or through whom such deals should be made; that the transactions were conducted by appellants in their firm name through commission men at Toledo and other points. The transactions were not severable into stages or parts, but were a whole, including the betting on the price of grain and accounting to appellee for the profits realized. In order that appellee's action in the matter could avail him anything, it was necessary, under the circumstances, that appellants should not only make wagers, but that they should also collect the gains. Appellee did not know with whom or where the deals were being made, and he was not known in the transaction by the commission men at Toledo. Appellee must, of necessity, under the circumstances disclosed by the evidence, have looked to appellants, and to no one else, for an accounting. The appellants were, for appellee, necessary parties to each and every part of the transactions.

Now what is the law applicable to this state of facts? The rule, as stated by Judge MITCHELL in *Sondheim v. Gilbert, Ass'nee,* 117 Ind. 71, is as follows:

"While contracts for the sale of property to be delivered in the future are valid, when the parties, or either one of them, actually contemplate a delivery of the sub-

ject matter of the contract, yet if, under the guise of a contract which has the appearance of validity upon its face, the real intention is merely to speculate on the rise or fall of the market, without any purpose that any property shall be delivered or received, but with the understanding that at the appointed time the account is to be adjusted by paying or receiving the difference between the contract and the current price, then the whole contract is illegal, as against public policy, and falls under the condemnation of the law." *Davis* v. *Davis*, 119 Ind. 511; *Whitesides* v. *Hunt*, 97 Ind. 191; *Root* v. *Stevenson's Admr.*, 24 Ind. 115; *Daniels* v. *Barney*, 22 Ind. 207.

In *Harevy* v. *Merrill*, 150 Mass. 1, the court says:

"It is now settled here, that contracts which are void at common law, because they are against public policy, like contracts which are prohibited by statute, are illegal as well as void. They are prohibited by law because they are considered vicious, and it is not necessary to impose a penalty in order to render them illegal. *Bishop* v. *Palmer*, 146 Mass. 469; *Gibbs* v. *Consolidated Gas Co.*, 130 U. S. 396. The weight of authority in this country is, we think, that brokers who knowingly make contracts that are void and illegal as against public policy, and advance money on account of them at the request of their principals, can not recover either the money advanced or their commissions, and we are inclined to adopt this view of the law. *Embrey* v. *Jemeson*, 131 U. S. 336, *ubi supra*, and the other cases there cited."

Counsel for appellee do not controvert the legal proposition enunciated in the authorities hereinbefore cited but deny their application to this case. They insist that appellants were the appellee's agents. Counsel then say: "And we affirm the law to be, that when a principal in carrying on an illegal businees, by or through an agent, and money arising from, or growing out of the illegal

business, comes into the hands of the agent for his principal, that the illegal business is ended and the agent must account.   And that his obligation to account is in no wise connected with the illegal business.''

The general rule is well settled that where an agent receives money for the use of his principal, he can not be heard to say when called to account that the transaction between the principal out of which the money grew was illegal.

In this case, however, if it is conceded that the relation of principal and agent existed between appellants and appellee, the principal and the agents were so intimately connected with the illegal business in promoting and carrying it foward that they all became tainted with the vice of the business.   In the language used in *Lemon* v. *Grosskopf*, 99 Am. Dec. 58.   ''It was as well a part of his agency to receive and account for the money as to sell the tickets.''   In this case it was as well a part of the agency of appellants to receive and account for the profits as it was to make the deals.   In this connection we quote from the decision in *Pearce* v. *Foote*, 113 Ill. 228, as follows:

''The agreement, as the trial court was authorized to find it, is, that Hooker & Co., contracted to give plaintiff the privilege to deal in options with or through them, and, if there was a loss, plaintiff was to pay it to them, and 'if there was a gain,' Hooker & Co., were to pay it to plaintiff, and for their services they were to be paid a commission.   The suggestion that Hooker & Co., merely acted as agents for the plaintiff in these unlawful transactions may be rejected at once as having nothing in its support.   There is and can be no such thing as agency in the perpetration of crimes or misdemeanors, or, indeed, in the doing of any unlawful act.   All persons actively participating are principals.''

See, also, *Flagg* v. *Baldwin,* 38 New Jersey Eq. 219; *Ruchizky* v. *DeHaven,* 97 Pa. St. R. 202.

Counsel for appellee rely on the following cases to support their position: *Wright* v. *Hughes,* 13 Ind. 109; *City of Indianapolis* v. *Skeen,* 17 Ind. 628; *United States Express Co.* v. *Lucas,* 36 Ind. 361.

The cases cited, as we view them, do not sanction the recovery of the money in controversy by legal proceedings. In those cases there had been some unintentional omissions in an honest effort to comply with the law while in this case there was no unintentional omission in an honest effort to comply with the law; but, on the contrary, the appellee engaged with and through the appellants in a gambling enterprise, which is held by the law to be illegal and void as against public policy, because of its vicious and demoralizing tendencies. In cases of the class last cited, to hold that the agent is not bound to account for the money received by him would be to sanction acts of the grossest dishonesty and bad faith on the part of the agent without the accomplishment of any benefit to any one or to the public; but in cases of the class of the one now under consideration, for the courts to hold that one of the parties who enters into a gambling transaction through another can recover the winnings, on the theory that the relation of principal and agent exists, would be to encourage vicious and demoralizing practices.

In other words I apprehend the rule to be this, if A and B enter into a wagering contract, and B pays the wager to C, who was not connected with the original illegal transaction, to deliver to A, he can recover the money in an action against C, or where, in an honest effort to comply with the law, there has been an unintentional omission which renders the transaction illegal and there is no moral turpitude. as the result of which,

money belonging to the principal comes into the hands of the agent the principal can recover it, because to require the] agent to account for the money would not sanction the original illegal transaction, but where A authorizes and directs C to enter into wagering contracts for his benefit with authority to collect and account to him for the winnings, and C enters into such wagering contract in his own name with B and the wager is paid by B to C, A can not recover the money in an action against C, because all the parties are *in pari delicto* throughout the entire illegal transaction from its inception to its conclusion, and to hold that A could recover would encourage vicious and demoralizing practices. It is true the act of the appellants in refusing to pay the money in controversy to appellee is not to be commended. It may be conceded that the money won on the wagers did not belong to them and that they have no right, either legal or moral, to retain it. This, however, does not authorize the court in rendering judgment in favor of appellee against appellants for the money so withheld. In all such cases, as the one here presented, the law as we understand it leaves the parties where it finds them.

See *State* v. *Tumey*, 81 Ind. 559; *Reed* v. *Dougan*, 54 Ind. 306.

Judgment reversed with instruction to sustain appellants' motion for a new trial.

Filed Nov. 22, 1894; petition for rehearing overruled Feb. 7, 1895.