Bond, County Judge *v.* Kennedy.

4-8635                                        212 S. W. 2d 336

Opinion delivered June 28, 1948.

*J. H. Spears,* for appellant.

*Cecil B. Nance,* for appellee.

Minor W. Millwee, Justice.    The questions to be determined by this appeal are: First, the right of Crittenden county, Arkansas, to build a county hospital

outside the corporate limits of Marion, Arkansas, the seat of justice or county seat of said county; second, whether a proposed deed will convey good title to the county.

An election was held in Crittenden county on October 28, 1947, under the provisions of Amendment No. 17, as amended by Amendment No. 25, to the State Constitution. A majority of the electors voting at said election authorized the construction of a county hospital and the levying of a special building tax for that purpose. The estimated cost of the hospital to the taxpayers of Crittenden county is $800,000, to which sum the federal government proposed to add $400,000, or one-third the total cost of construction and equipment of the hospital.

Appellee, a citizen and taxpayer, appealed to the circuit court from a judgment of the county court adopting the report and recommendations of a commissioner of public buildings and ordering payment of $5,000 appropriated by the quorum court for the purchase of a building site selected by said commissioner. At the trial in circuit court, a jury was waived and the cause submitted to the trial court upon the order of the county court together with certain exhibits thereto, and the following stipulation:

"1. That Lamar L. Rogers is the duly appointed Commissioner of Public Buildings of Crittenden county, Arkansas, and as such Commissioner was requested by the county court in its official capacity to locate a suitable site for a proposed county hospital; that he located a site and has offered a deed of Eugene Woods and wife dated March 23, 1948, said deed having been approved by said Commissioner and by the appropriate authorities of the State of Arkansas and by the appropriate authorities of the United States of America from whom a grant to aid in the construction of the county hospital is being awarded; that the said site obtained is the most advantageous site in Crittenden county, Arkansas, and that his report was confirmed and approved on the 5th day of April, 1948, by C. H. Bond, County

Judge of Crittenden county, Arkansas, and that the said C. H. Bond, acting in his official capacity as county judge of Crittenden county, Arkansas, directed the Clerk of the County Court of Crittenden county, Arkansas, to issue a warrant drawn on the general treasury of Crittenden county, Arkansas, for the sum of five thousand and no/100 ($5,000) dollars, payable to Eugene Woods.

"2. It is further stipulated and agreed that the site of the proposed hospital is located in block nine (9) of the Eugene Woods Subdivision to the City of West Memphis, Arkansas, same lying and being situate in the northeast quarter (NE¼) of section thirteen (13), township six (6) north, range eight (8) east and is six miles south of Marion, which is the seat of justice and the county site of Crittenden county, Arkansas, and that there is no suitable ground belonging to the county for the site of said hospital, at the seat of justice which is Marion, and that Marion has no modern or adequate sewer system that will be needed to service a hospital of the size needed to serve Crittenden county.

"3. It is further stipulated and agreed that the deed conveying said property to the County of Crittenden contained the following clause:

" 'TO HAVE AND TO HOLD the said premises unto the said grantee, in fee simple forever, together with all appurtenances thereunto belonging or in anywise appertaining. SUBJECT, however, to the following conditions to the faithful observance of which the grantee by the acceptance of this deed firmly binds and obligates itself, its successors and assigns, to-wit: Said grantee shall within thirty-six months from the date hereof commence the construction upon said property of a hospital building and shall have same ready for occupancy as a hospital within ninety-six months from this date, and in the event either of such said conditions is not complied with, the grantor, his heirs, devisees, or assigns shall have the exclusive option to buy said property for the sum of five thousand & no/100 ($5,000) dollars for a period of ninety days from the first breach of the foregoing conditions, which privilege shall be

binding upon the grantee, its successors or assigns, it being agreed and understood that the cash consideration paid hereunder to the grantor is substantially less than the present market value of said property and that the moving consideration for the conveyance of same by the grantor to the grantee is to aid in the construction of a hospital thereon.'

"4. It is further stipulated and agreed that an election was regularly called and held in Crittenden county, Arkansas, under the provisions of Amendment No. 17 of the Statutes of Arkansas on the 28th day of October, 1947, at which election a majority of the qualified electors of Crittenden county, Arkansas, voting at said election, authorized the construction of a county hospital for Crittenden county, Arkansas, and the levying of a tax for said purpose.

"5. It is further stipulated and agreed that on the 17th day of November, 1947, the Quorum Court of Crittenden county, Arkansas, levied a tax of four mills for the purpose of the retirement of the principal and interest of bonds in the sum of eight hundred thousand and no/100 ($800,000) dollars which are to be issued for the construction of said county hospital; that on the 5th day of January, 1948, the Quorum Court of Crittenden county, Arkansas, appropriated the sum of five thousand and no/100 ($5,000) dollars for the purchase of a site for said county hospital."

The order of the county court further found that the deed offered to the county conveyed title in fee simple. It also approved an agreement by the county to the condition imposed by the federal government as a prerequisite to its grant of aid in the construction of the hospital under the provisions of the Federal Hospital Survey and Construction Act (Public Law No. 725, 79th Congress). This agreement provided that in the event the county should sell the hospital to any person or agency which is not qualified for such federal aid, or is not approved as a transferee by the state agency, or if said hospital has ceased to be a nonprofit hospital, within 20 years after completion of construction of said

hospital, then the federal government shall be entitled to recover one-third of the value of such hospital from either the transferer or tranferee.

The circuit court found the county court to be without authority to purchase a site for a county hospital away from Marion, the county seat of justice. The order of the county court authorizing the purchase of the site was set aside and the county has appealed.

The judgment of the trial court is based upon §§ 2455 and 2456, Pope's Digest, which provide:

"Section 2455. The court shall designate the place whereon to erect any county building on any land belonging to the county at the established seat of justice thereof.

"Section 2456. If there be no suitable ground for that purpose belonging to the county, the commissioner of public buildings shall select a proper piece of ground at the seat of justice, and may purchase or receive by donation a lot or lots of ground for that purpose, and shall take a good and sufficient deed in fee simple for the same to the county, and shall make report of his proceedings to the court at its next term."

These sections of the digest originally appeared as §§ 8 and 9, Chapter 36, of the Revised Statutes adopted by the Legislature of 1837. This chapter of the Revised Statutes contained 19 sections dealing with the subject of county buildings, which, with the exception of §§ 3 to 5, inclusive, now appear as §§ 2451 to 2466, Pope's Digest. The first two sections of said Chapter 36 (now §§ 2451 and 2452, Pope's Digest) provide for the erection in each county of a county courthouse and jail at the county seat, and also a fireproof vault for the keeping of county records either in a separate building near the courthouse, or inside the courthouse. No other buildings are mentioned in the statute as originally adopted although there are references in other sections of the statute to "any of the buildings aforesaid," "any public buildings" and "any county building," as in § 2455, Pope's Digest, *supra*. This chapter of the Revised Stat-

utes later appeared as the first 19 sections of Chapter 42 of Gould's Digest.

By an act of January 10, 1851, page 99, the Legislature provided for the building and establishment of county poorhouses without restriction as to location within the county. This act later appeared as §§ 20 to 26 of Chapter 42 of Gould's Digest and is now found in Chapter 127 of Pope's Digest.

Act 56 of 1871 authorized counties to issue bonds, not to exceed $50,000, for the construction of courthouses and jails and prescribed the procedure to be followed in the issuance of such bonds. The Legislature of 1873 treated said Act 56 of 1871 as having repealed Chapter 42 of Gould's Digest in its entirety, and by Act 51 of 1873 the 1871 act was repealed and Chapter 42 of Gould's Digest re-adopted.

If §§ 2455 and 2456 of Pope's Digest, *supra,* are lifted from their context as a part of the early statute and literally construed, then it is apparent that the construction given by the able trial court is proper. It, therefore, becomes necessary to determine the intent of the Legislature of 1873 when it re-adopted the Revised Statutes of 1837 with reference to the erection and location of county buildings. Did the Legislature intend to restrict the location of all county buildings to the seat of justice of the county, or did such restriction merely apply to such buildings as were referred to in the enactment, which were the only public buildings the county was authorized to construct at the time? In determining this question there are certain principles of statutory construction established by our decisions which should be noticed.

In the case of *Perry County* v. *House,* 196 Ark. 317, 117 S. W. 2d 342, the court stated: ''The primary rule in the construction of a statute is to ascertain and give effect to the intention of the lawmakers, and this intention is to be ascertained from a consideration of the entire act. In arriving at the intention of the lawmaking power it is proper to consider the object to be se-

cured, the circumstances attending the adoption of the measure, and its relation to other laws. *Koser* v. *Oliver,* 186 Ark. 567, 54 S. W. 2d 411; 25 R. C. L. 960, 965; 59 C. J. 948; *Berry* v. *Cousart Bayou Drainage Dist.,* 181 Ark. 974, 28 S. W. 2d 1060.''

And in *Prewitt* v. *Warfield, County Judge,* 203 Ark. 137, 156 S. W. 2d 238, the court said: ''The primary rule in the construction of statutes is to ascertain and give effect to the intention of the Legislature. In order to arrive at the intention of the Legislature the court should examine the statute in the light of the history of its enactment, the contemporary history of the conditions and situation of the people, the economic and sociological policy of the state, its constitution and laws, and all other matters of common knowledge within the limits of their jurisdiction. Prior legislation on the subject, the entire legislation at the time, and the reasonableness or otherwise of one construction or the other are matters competent for consideration. 25 R. C. L. 1029.''

In 50 Am. Jur., Statutes, § 236, it is stated: ''Because it is easy to be wise after one sees the results of experience, there is always a tendency, it has been said, to construe the language of a statute in the light in which it appears when the construction is given. Such an approach to the question is erroneous. Since, in determining the meaning of the terms of a statute, the aim is to discover the connotation which the Legislature attached to the words, phrases, and clauses employed, the words of a statute must be taken in the sense in which they were understood at the time when the statute was enacted, and the statute must be construed as it was intended to be understood when it was passed.''

The rule which gives consideration to surrounding circumstances and the history of the time in determining legislative intent has been recognized in interpreting the intent of the framers of the State Constitution. In *Conner* v. *Blackwood, State Highway Commissioner,* 176 Ark. 139, 2 S. W. 2d 44, the appellant contended that an act which authorized the State Highway Commission

to construct and operate toll bridges on the state highway system was unconstitutional in that it deprived the county courts of their exclusive original jurisdiction over roads and bridges in violation of Art. 7, § 28 of the State Constitution. In holding the act valid, this court, speaking through the late Justice McHaney, said: "We do not think the framers of the Constitution had in mind any such stupendous advancement in methods of locomotion and means of transportation as exists today. They did not get a vision of the future of their State, with its citizens traveling entirely across the State over a great State Highway, a distance of three or four hundred miles, in ten or twelve hours. Then, with the means at hand, 50 miles was a hard day's journey. Even so, they did not, in framing the Constitution, deny the right, power and authority of the State to lay out, construct, repair and maintain State highways, and necessarily bridges or ferries thereon." The same rule of construction has been applied by this court to the wording of deeds. *Beasley* v. *Shinn*, 201 Ark. 31, 144 S. W. 2d 710, 131 A. L. R. 1234; *Missouri Pac. Rd. Co., Thompson, Trustee* v. *Strohacker*, 202 Ark. 645, 152 S. W. 2d 557; *Carson* v. *Missouri Pacific Railroad Co., Thompson, Trustee*, 212 Ark. 963, 209 S. W. 2d 97.

When §§ 2455 and 2456, Pope's Digest, *supra,* are construed in the light of these well established rules of construction, we think it is clear that the Legislature of 1873, in reviving the 1837 statute, only intended to require the location of courthouses, jails and record vaults at the seat of justice of the county. These were the only buildings mentioned in the statute and the reasons for restricting location to the seat of justice are obvious. The courts of justice and county offices and records were maintained and kept in the courthouse. It was also proper and convenient for county jails to be at the seat of justice for the incarceration of persons awaiting trial or convicted of crimes in the courts. On the other hand, the reasons that demanded the location of these buildings at the seat of justice do not prevail in the case of such county buildings as a hospital, or poorhouse. In many cases, as here, the seat of justice may

not have the facilities or provide a suitable location for furnishing proper hospital service to inhabitants of the county.

Nor is it likely that the Legislature of 75 years ago foresaw the economic changes which have given rise to the present day need for county hospitals. Arkansas was predominantly an agricultural state in 1873 with few thickly populated areas or industrial centers. Each farm family managed to take care of its own sick and indigent, and the Legislature did not foresee the shifting of the farm population to urban industrial centers thus creating a need for county hospitals. This need was not recognized by the electorate until 1938 when Amendment 25 to the Constitution was adopted enabling the electors of a county to authorize the construction of a county hospital. Our conclusion that the lawmakers of 1873 did not intend to include county hospitals in the requirement that county buildings be located at the seat of justice is strengthened by the fact that a subsequent Legislature authorized the building of county poorhouses without such restriction as to location.

It will be noted that the owner of the land offers to convey it to the county at the price of $5,000 upon the condition that the county shall within 36 months from the date of the deed begin construction of the hospital upon the lands conveyed, and shall have it ready for occupancy as a hospital within 96 months from said date. Upon a breach of either condition, the grantor, or his successors, is granted the exclusive option to buy said property for $5,000, the option to run for a period of 90 days from the first breach of the foregoing conditions.

It is argued that this provision of the deed constitutes a reversionary clause and that fee simple title will not, therefore, be conveyed to the county. The case of *Corpier* v. *Thompson*, 155 Ark. 509, 244 S. W. 738, involved the construction of a deed containing a similar provision. It was there said: ''We do not think the court erred in quieting the title in J. B. Thomason to the four acres of land constituting the site of the Mason

schoolhouse. The record reflects that J. B. Thomason purchased the said tract of land from Rural School District No. 20 before Act No. 598, Acts 1921, went into effect. The contention of appellant, W. J. Corpier, is that said tract of land reverted to him when Rural Special School District No. 20 abandoned the site for school purposes. The record reflects that W. J. Corpier conveyed the property to Common School District No. 62, which district was subsequently absorbed by Rural Special School District No. 20. The deed was lost, but the proof showed that it contained the following provisions: 'But when ceased to be used for school purposes, that I (W. J. Corpier) or any one else owning the land at that time, is to have the land at the specific price of $60.' The above is not a reverting clause. It is an optionary clause on the part of the grantor in the deed, to repurchase the land, upon a contingency therein expressed, for the sum of $60. The deed passed a fee title absolute to Common School District No. 62, and its successor, Rural Special School District No. 20, sold the land to appellee, J. B. Thomason, before appellant, W. J. Corpier, attempted to exercise the option.''

So here, the grantor merely has an option to repurchase the hospital site upon certain contingencies which end with the completion of the building. The condition stipulated is not a reverting clause and the deed passes title to the county in fee simple.

There is nothing in the agreement with the United States that restricts the county's title to the building site. As a condition for granting federal aid the government is entitled, under the agreement, to recover one-third of the value of the hospital if it is sold to certain classes of persons within 20 years or ceases to be operated as a nonprofit hospital within that period. The title never reverts to the United States in any event, and the condition expires at the end of twenty years.

It follows that the trial court erred in holding that the county court is without authority to purchase the site for a county hospital outside of Marion, the seat of justice of the county. The judgment is, therefore, reversed

and the cause remanded with directions to reinstate the order and judgment of the county court.

McFADDIN, J., dissents.