The Honorable John Paul Capps State Senator 914 James Street Searcy, AR 72143
Dear Senator Capps:
I am writing in response to your request, on behalf of White County Judge Bob Parish, for an opinion concerning municipal zoning ordinances. You have inquired as follows in this regard:
Can a municipality require a county to follow its zoning ordinances?
 Specifically, White County has purchased property in an industrial area of Searcy for the purpose of building a new jail. The citizens of White County recently passed a new tax to fund the construction and maintenance of this new jail. However, the city of Searcy's zoning ordinance has no provisions for a zone in which a jail could be built. Thus, the City of Searcy has maintained that White County must make application to the City Planning Commission for a conditional use permit and to change the zoning map to allow for this use. The City Planning Commission has voted to deny the use.
 In light of the county's superior sovereignty, as well as A.C.A. 14-19-108, can the City of Searcy require White County to follow its zoning ordinances for this particular use?
RESPONSE
It is my opinion in response to your specific inquiry concerning a city's regulation of site location for a county jail that a city can, as a general matter, require a county to follow its zoning ordinances for this use.[1] That is, in my opinion, White County must attempt compliance with local zoning in this regard, giving the City of Searcy the initial land use decision. The reasonableness of that decision may, however, be tested through a balancing of the public interests involved. I lack sufficient information to review the possible factors involved in this analysis, and cannot in any event definitively decide the matter without the benefit of interpretive Arkansas case law. This issue may ultimately require resort to the courts for resolution.
It must first be noted in addressing this matter that the proper approach to a conflict between a local zoning authority and another governmental entity that seeks to avoid zoning regulation is by no means clear in Arkansas. A previous administration of this office opined that in light of language found in one Arkansas Supreme Court case, our court would likely adopt a "balancing of interests test" to determine whether a particular zoning regulation is applicable to public property. Op. Att'y Gen. Nos. 92-024 and 91-120, supra (citing Lavender v. City of Rogers,232 Ark. 673, 339 S.W.2d 598 (1960) (involving application of a city building permit requirement to a public school building contractor). I agree that a balancing approach is likely, given the court's apparent refusal in Lavender to ascribe to a more simplistic or mechanical approach such as the governmental-proprietary test or the so-called "superior sovereign" rule. See E.M. Tomko-DeLuca, Applicability of ZoningRegulations to Governmental Projects or Activities, 53 A.L.R.5th 1 (1997) (analyzing cases involving theories of governmental immunity and exemption from zoning regulations). In Lavender, the court noted that the statutes pertaining to school building construction, which vest certain authority in the State Board of Education, "do not contain any language expressly taking away all authority (in matters relating to building schools) granted municipal corporations to regulate construction."232 Ark. at 676. The court then cited several statutes reflecting the city's general regulatory authority with respect to building construction and upheld the permit requirement, declining to find that the city lacked any regulatory authority over the construction of a public school building.Id. at 677. See also Lavender v. City of Rogers, 233 Ark. 161,343 S.W.2d 103 (1961) (presenting the same question regarding the city's authority to require a building permit of a contractor about to undertake the construction of a building for the school district).
I am satisfied after reviewing Lavender that our court would not resolve the issue at hand involving local land use regulation by simply citing the "county's superior sovereignty," as you have phrased it.[2] And as stated above, I agree with my predecessor that a balancing test likely would be utilized to weigh the competing interests of the county and city in case of a conflict. As one court has observed, "the modern trend in resolving government zoning conflicts is to apply the balancing of interests test." City of Crown Point v. Lake County, 510 N.E.2d 684, 689
(Ind. 1987) (involving a county's refusal to seek rezoning or a special use permit for a correctional facility). The Indiana Supreme Court described the general test as follows:
 The balancing of interest has generally consisted of a two-tiered analysis. The first step is to determine whether the intruding authority is immune from the local zoning authority. If the intruding authority is immune, it may make the initial land use decision without complying with local zoning. If not immune, the intruding entity must attempt compliance with local zoning, thus giving the local zoning authority the initial land use decision. The second tier of the balancing test requires a determination of the reasonableness of the initial land use decision.
Id.
With regard to the initial immunity determination in this instance, I find no clear expression of intent in the statutes to immunize a county from city land use regulations. The statute you have cited, A.C.A. §14-19-108, provides:
 (a) There shall be erected in each county, at its established seat of justice, a good and sufficient courthouse and jail.
 (b) The quorum court may, by a majority vote, or by referral to a vote of the people, determine the location of the jail facility at some location other than the established seat of justice.[3]
It seems clear that the Quorum Court of White County is vested with authority under this provision to decide whether the county jail shall be located in the City of Searcy. Nothing in the statute suggests, however, that a county jail may be located at the county seat without regard to local land use regulations. Cf. County of Venango v. Borough ofSugarcreek, Zoning Hearing Board, 534 Pa. 1, 626 A.2d 489 (1993) (finding no clear indication that county officials could ignore local zoning restrictions under a statute authorizing construction of a county jail at the county seat or elsewhere by county action). Indeed, the Quorum Court's apparent authority to decide on another location might undermine the suggestion that the County may preempt local regulation in this regard.[4] A city's statutory authority to regulate land use within its corporate boundaries is clear. See, e.g., A.C.A. §§ 14-56-301 and -305 (Repl. 1998) (authorizing zones limiting the character of buildings that may be erected therein) and A.C.A. § 14-56-416 (Repl. 1998) (authorizing a zoning ordinance "for the entire area of the municipality.") Borrowing language from Lavender, 232 Ark. 673, I conclude that A.C.A. § 14-19-108
does not expressly take away all authority, in matters relating to county jails, of cities to regulate land use.
Nor do I find any other statutory basis for asserting a county's absolute immunity from a city's land use regulations. Consequently, it is my opinion that the City of Searcy is authorized to make the preliminary land use decision in this instance. As indicated above, however, I believe a balancing of interests analysis may be required in the event of a conflict between the County's effort to locate a jail facility at the county seat and the City's zoning restrictions. Although our court has not addressed this precise issue, some guidance may be gleaned fromLavender, supra, wherein the court found no basis for exempting a school district altogether from city building regulations, but intimated that a different question might have been presented had the ordinance or a particular regulation been before the court. 232 Ark. at 676.[5] The allegation in Lavender was "simply that the City of Rogers is without authority to pass any ordinance relating to . . . construction [of public school buildings][.]" Id. at 673. Finding no support in the statutes for that contention, the court upheld the building permit requirement, leaving undecided the possibility of other particular challenges to city regulations affecting public school construction.
This leads me to speculate that questions may remain regarding a city's regulation of site location for a county jail, notwithstanding the absence of specific statutory immunity in favor of the county for this use. Unfortunately, the method for resolving any such challenges was also left undecided by Lavender. Courts in other jurisdictions have used different methods in conducting a balancing analysis to resolve conflicts of this nature. See City of Crown Point, supra. While I cannot be certain of the method our court would adopt if faced with the issue, it is my opinion that the approach in City of Crown Point may reasonably be relied upon pending a judicial determination. Having first determined in that case that the city was not generally barred from enforcing its zoning requirements against the county, the Indiana Supreme Court observed that "an intruding entity must be allowed to seek relief under some circumstances[,]" but it must "bear the burden to show that immunity is necessary to advance the governmental ends it seeks." Id. 690. The court concluded by identifying various factors to be considered in deciding whether the county should be relieved from local zoning under the circumstances, stating as follows:
 When a zoning authority has denied an intruding government's request for approval of a given land use, an appeal can lie to the courts, which will balance the interests to determine which must prevail. Factors to be considered include the propriety of the land use, such as the economic and environmental impact on the area, the kind of function or land use involved, the availability of alternative locations, and any attempts to minimize detriments to adjacent landowners, as well as a consideration of competing interests, such as the nature and scope of the intruding government unit, the essential use to the local community and the broader community, the need for the specific site as compared to the adverse impact, the social utility of the proposed use, and the possible frustration of a governmental function.
Id. at 690-91.
I have not seen the relevant zoning ordinance[s] and I have no specific information concerning the County's application for the particular use in this instance or the City's denial thereof. I thus cannot engage in any meaningful analysis of the issues presenting by the above balancing of interests test. In any event, this is appropriately within the province of the courts, assuming that the matter is not resolved through local zoning proceedings.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] The general question of whether a county is subject to city zoning ordinances does not lend itself to a simple "yes" or "no" answer. Zoning ordinances may concern building and lot regulations and may regulate uses of property. Any meaningful analysis requires reference to the particular exercise of zoning power, together with any expression of legislative intent on the area of regulation in question. See generally Ark. Op. Att'y Gen. Nos. 92-024 and 91-120.
[2] It should perhaps also be noted in this regard that according to at least one legal commentator, attempting to label one government entity "superior" merely begs the question of which agent of the sovereign should prevail on the issue of land use. Note, Government Immunity fromLand Zoning Ordinances, 84 Harv.L.Rev. 869, 877 (1971). See alsoCommonwealth of Pennsylvania Dept. of General Services v. Ogontz AreaNeighbors Assoc, 505 Pa. 614, 622-23, 483 A.2d 448 (1984) (stating, in a local land use dispute between a city and a state agency, that "the conflict . . . is not a contest between superior and inferior governmental entities, but instead a contest between two instrumentalities of the state. [Citation omitted.] The legislature has the power to regulate both of these governmental entities, enlarging or restricting their authority to act.")
[3] The City of Searcy is the "established seat of justice," i.e., the county seat, in White County.
[4] The statute as originally enacted required the location of courthouses and jails at the county seat. See Bond v. Kennedy,213 Ark. 758, 212 S.W.2d 336 (1948) (discussing the statute's history). Subsection (b) was added in 1994 (see Acts 1994, 2nd Ex. Sess., No. 64). The court in Bond stated, with regard to the original requirement, that ". . . the reasons for restricting location to the seat of justice are obvious. The courts of justice and county offices and records were maintained and kept in the courthouse. It was also proper and convenient for county jails to be at the seat of justice for the incarceration of persons awaiting trial or convicted of crimes in the courts." 213 Ark. at 765." With the addition of subsection (b), the quorum court was apparently given the flexibility to locate these facilities outside the county seat. Even if this history suggests that the statute should be interpreted to give a preference to the county seat location, depending upon the location of the courts, there is no indication that this can be decided without regard to a city's zoning authority.
[5] The court stated:
 It is apparent therefore, that cities, in certain instances, do have the authority to regulate some features relating to public buildings. As stated, the ordinance is not before us, and we are unwilling to make a sweeping finding that a municipality . . . cannot regulate in any manner, any phase, aspect, or feature relating to the construction of a public school building.
Id. at 677.