# DAMLER ET AL. *v.* BAINE

[No. 17,082. Filed December 16, 1943. Rehearing denied January 16, 1944. Transfer denied March 6, 1944.]

*Crumpacker & Friedrich* and *Jay E. Darlington,* all of Hammond, *McHale, Arthur, Myers & Patrick,* of Indianapolis, and *Philip A. Gibbons,* of Chicago, Illinois, for appellants.

*Jones, Obenchain & Butler,* of South Bend, and *Walter E. Parent* and *William Kenefick,* both of Michigan City, for appellee.

FLANAGAN, J.—This action was brought by appellee, James C. Baine, against the appellants, John C. Damler and Pauline Damler, by a complaint which asserts the liability of appellants to appellee on an implied contract to indemnify the appellee who, as surety for the appellants, had pledged certain stocks and deposited certain cash with a broker with whom the appellants carried accounts in which they purchased stocks on margin.

Trial was had to the court which found the facts specially and stated its conclusions of law in favor of appellee. Judgment followed the conclusions.

Errors assigned on appeal are that the court erred (1) in overruling appellants' motion for a new trial, (2) in its conclusions of law, and (3) in sustaining appellee's demurrer to the fourth paragraph of answer.

Under the assignment that the court erred in overruling appellants' motion for a new trial, the only proposition supported by authority concerns the sufficiency of the evidence to support a part of the court's finding numbered 7. However, the motion itself concedes that this finding is supported by evidence but states that the finding "is against the manifest weight of the evidence." We cannot weigh the evidence. We find no error in the overruling of the motion for a new trial.

The facts which are pertinent to questions involved

in this appeal, as they were found specially by the trial court, are as follows:

The appellants, husband and wife during all the time here involved, resided in Chicago during the year 1929 and thereafter until July, 1935, when they moved to Michigan City, Indiana, where they have continued to reside.

During the year 1929 and until October 2, 1931, each of the appellants had separate trading accounts with the brokerage firm of S. B. Chapin & Company in the City of Chicago, hereinafter referred to as the broker, through which accounts they purchased stocks listed on the national stock exchanges on margin. Appellant John C. Damler had given the broker a written guarantee of the obligations of his wife's account and she in turn had given it written acknowledgment that her husband was authorized to act for her in all matters relating to her account. Stocks were purchased on the usual margin plan whereby the broker acquired and held to their account the stocks so purchased, subject to the rules, regulations and conditions then applied to the purchases of stock through brokers on national stock exchanges. To evidence these transactions with each of appellants, the broker carried accounts with them. The account in each instance set up as a credit the stocks so purchased by the broker and held for the appellants, and as a debit the amount advanced by the broker to acquire such stocks, together with carrying charges including interest, and broker's commissions. Under the terms of such purchases each of the appellants was required to maintain with the broker a margin of value, that is a certain percentage of value in the stocks so purchased or collateral deposited by the appellants in the account, in excess of the debits due the broker. If at any time the margin, in the opinion

of the broker, was not adequate for its protection, under the terms of the contract between the broker and the appellants, it was permitted to call on the appellants for the deposit of additional money or collateral, and upon failure of the appellants to meet such calls the broker was authorized to sell the stocks in the appellants' accounts and close the accounts.

Prior to October 29, 1929, each of the appellants had purchased stocks of considerable value and on that day the broker called on appellants for additional margins in their accounts because of a declining market. They were unable to meet the calls and appellant John C. Damler telephoned. appellee who lived in Michgan City, Indiana, telling him of the calls and asking for assistance. In response appellee went to Chicago on the same day, met said appellant at the broker's office and placed 400 shares of his stock in the account of appellant Pauline Damler, and 200 shares of his stock in the account of appellant John C. Damler. From that date to October 2, 1931, the market continued to decline and from time to time appellants were called upon for additional margins. On each such occasion one of them called appellee for help and he deposited in their respective accounts with the broker additional shares of stock. Appellants' accounts from and after October 29, 1929, were kept open solely by reason of the deposits made by appellee. Finally, on October 1, 1931, the broker called for additional margin, appellants informed it that they could not meet the requirements and their accounts were sold. Neither of the appellants or the appellee received anything back. In addition to the deposits of stock, appellee, on September 23, 1931, deposited $10,000 in cash to the account of appellant Pauline Damler.

Appellants, under their assignment that the court erred in its conclusions of law, contend that the facts as found do not show an implied contract to return appellee's stocks or reimburse him therefor because: (1) Appellee was a volunteer; (2) the parties were gambling by speculating in the stock market; (3) it was impossible to perform the alleged contract; and (4) the parties were bailor and bailee and there is no liability because the stocks were sold not in breach of, but in accordance with the bailment contract.

That appellee was not a volunteer appears from the finding of the court that he placed his stocks in the hands of the broker at the request of the appellants.

That the stock purchases by appellants did not constitute gambling appears from the finding of the court that the broker actually purchased the stocks ordered by appellants and held it to their account. See *Katz* v. *Nast* (1911), 187 Fed. 529; *Bailey & Graham* v. *Phillips* (1907), 159 Fed. 535; *Sondheim* v. *Gilbert, Assignee* (1888), 117 Ind. 71, 18 N. E. 687; *Nave* v. *Wilson* (1894), 12 Ind. App. 38, 38 N. E. 876; *Wilson* v. *National Fowler Bank* (1911), 47 Ind. App. 689, 95 N. E. 269; *Sawers Grain Co.* v. *Teagarden, Rec.* (1926), 84 Ind. App. 522, 148 N. E. 205. Appellants say, however, that appellee's part of the transaction was a gamble because, whether his stocks were returned to him depended upon the rise or fall of the market. There is, of course, no merit to this contention if, as appellee claims, his contract was for the return of his stocks or reimbursement by appellants.

Appellants say that the contract was impossible of performance because appellee placed the stocks in the

hands of the broker, empowering the broker to sell them and thereby made it impossible for appellants to return the stocks to him. If appellants' obligation was to return the stocks or reimburse appellee, the sale of the stocks did not make the contract impossible of performance.

Neither do we find any contract of bailment between appellee and appellants. Where the owner of personal property pledges it to another to secure a debt, a contract of bailment results and the pledgor is also bailor, and the pledgee is also bailee. § 1, Restatement of the Law of Security. That relationship existed in the present case between appellee and the broker but not between appellee and appellants. Appellee did not pledge his property to appellants.

Where a pledge is made as security for the obligation of a third party, the pledgor is a surety to the extent of the pledged chattel. § 36, Restatement of the Law of Security. Where the surety's property is used to satisfy the principal's debt, it is the duty of the principal to reimburse the surety to the extent of his reasonable outlay if the surety's property has been subjected to a charge with the consent of the principal. § 104, Restatement of the Law of Security. It seems clear to us that the trial court was correct in concluding that the relationship of principal and surety existed between appellants and appellee and that appellee was entitled to be reimbursed for his loss.

Appellants object because the court allowed interest. It is settled in this State that a surety is entitled to be indemnified for the amount paid with interest. *Gieseke, Admr.*, v. *Johnson* (1888), 115 Ind. 308, 17 N. E. 573; *Keesling* v. *Frazier* (1889), 119

Ind. 185, 21 N. E. 552; *Goodwin* v. *Davis* (1896), 15 Ind. App. 120, 43 N. E. 881.

Appellants contend that if the contract between them and appellee is one of bailment it is barred by an Illinois statute. However, in view of our holding that it is not such a contract we need not consider the effect of the Illinois act.

Appellants also contend that the cause of action is barred under the Indiana six-year act. They say that the action, if any, accrued October 1, 1931, and this action was brought January 11, 1940, eight years and three months later. However, appellants did not become residents of Indiana until July, 1935. The time during which a defendant is a nonresident of this State is not computed on any period of limitation fixed by the statutes of Indiana. § 2-606, Burns' 1933, § 65, Baldwin's 1934.

Finally, appellants say that the court erred in sustaining appellee's demurrer to their fourth paragraph of answer. This paragraph of answer alleges in substance that no demand for the return of his stocks was made by appellee upon the appellants from the time of the sell-out by the broker until a few days before this suit was brought, and that in the meantime the value of the pledged stocks had so fluctuated that it could have been purchased by appellee at much less than its price when the demand was made.

It is appellants' contention that this paragraph of answer shows that appellee is estopped by acquiescence and changed conditions.

Essential elements of an equitable estoppel as related to the party claiming the estoppel are, (1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such

a character as to change his position prejudicially.   19 Am. Jur., § 43, p. 643.   There is nothing in the answer to show any lack of knowledge on appellants' part, any reliance upon the conduct of appellee, nor any action taken by appellants based upon such conduct.   We think the demurrer was properly sustained.·

Judgment affirmed.

CRUMPACKER, C. J., not participating.

NOTE.—Reported in 51 N. E. (2d) 885.