**Mae ASH, Clara Foreman, Kenneth Matney, Philip Mundy, Clifford Pendergrass, and Dwight Wilson, Plaintiffs-Appellants,**

v.

**RUSH COUNTY BOARD OF ZONING APPEALS, Defendants-Appellees,**

**Glenwood Terminal, Inc., Intervening Defendant-Appellee.**

No. 1–1282A363.

Court of Appeals of Indiana, First District.

June 11, 1984.

Rehearing Denied July 10, 1984.

Thomas Michael Quinn, Jr., Clark, Clark, Pappas & Quinn, Indianapolis, Ronald L. Wilson, Badell & Wilson, P.C., Rushville,

Maureen E. Gaddy, Indianapolis, for plaintiffs-appellants.

E. Edward Dunsmore, Knightstown, Vance M. Waggoner, Rushville, for defendants-appellees.

ROBERTSON, Judge.

Mae Ash, along with several other property owners, (petitioners) appeal the findings of fact and conclusions of law made by the Rush County Board of Zoning Appeals (Board) regarding the application for a zoning variance made by the Glenwood Terminal, Inc. (Glenwood Terminal). Glenwood Terminal applied for a variance in order to alter the zoning status of its property from agricultural to commercial in order to build a grain drying facility in the unincorporated village of Mauzy. The application was filed with the Rush County Area Plan Commission. The petitioners sought to appeal the granting of this variance to the Board which affirmed the decision of the plan commission. The petitioners appealed this decision to the circuit court which affirmed the decision of the Board. The appeal was pursued further to this court. We reversed and remanded the trial court's decision because the Board failed to make findings of fact, Ind.App., 451 N.E.2d 1132. The findings have been made and the petitioners now appeal the determination.

We affirm.

■ The petitioners raise three errors on appeal from the Board's findings of facts and conclusions of law: 1) whether the findings and conclusions are supported by sufficient evidence, are contrary to law, or constitute an abuse of discretion; 2) whether the Rush County zoning ordinances are unconstitutionally vague; and 3) whether the Board's composition was unlawfully constituted, such that its action would be void. The last two issues can easily be resolved because they were not raised by the petitioners in their motion to correct errors. The failure to include issues in the motion to correct errors constitutes a waiver. *Winkler v. Royal Insurance Company,* (1975) 167 Ind.App. 16, 337 N.E.2d 499. Furthermore, the record fails to disclose that these issues were raised before the trial court. We are not a court of original jurisdiction.

■ In order to discuss the petitioners' final issue it is necessary to make certain observations regarding zoning law. A great deal of confusion has been generated in this case because of the parties' failure to distinguish among rezoning amendments, variances, and special exceptions. Rezoning is a legislative matter which can only be accomplished by the actions of a legislative body. *Hills v. Area Plan Com'n. of Vermillion Cty.,* (1981) Ind.App., 416 N.E.2d 456. Appellate review of legislative determinations is quite limited. *City of Anderson v. Associated Furniture,* (1979) Ind.App., 398 N.E.2d 1321, *rev'd on other grounds,* Ind., 423 N.E.2d 293. A variance involves a deviation or change from the legislated zoning classification applicable to a certain piece of property. The granting of a variance by the Board is discretionary even though the petitioner may have satisfied the statutory criteria. A special exception involves a use which is permitted within the given zoning classification once certain statutory criteria have been satisfied. The granting of a special exception is mandatory upon compliance with the statutory criteria set forth in the ordinance. *Boffo v. Boone Cty. Bd. of Zoning Appeals,* (1981) Ind.App., 421 N.E.2d 1119. Upon remand, this case has been treated as an application for a special exception. We shall also treat it as a special exception.

Mauzy is an unincorporated village consisting of six houses. It is located on County Road 600 E in the area which intersects with State Road 44. Mauzy's size has remained constant since about 1900 and no other business has been conducted in the area since 1892. Other than the land purchased by Glenwood Terminal, the area is zoned for agricultural purposes. The petitioners presented evidence that the construction workers had been rude, that surrounding roads had an increase in traffic often beginning early in the morning, that

some of the construction traffic trespassed onto the petitioners' property, and that the petitioners had experienced some difficulty with their water supply. One of the petitioners testified that she was negotiating the sale of her home prior to the construction, but that negotiations ceased after the construction began.

Glenwood Terminal presented evidence to the Board that its purpose in altering the zoning was to permit the construction of a grain handling facility. It intended to ship grain to the east coast and eventually overseas. Glenwood Terminal also presented evidence that farmers operate on a very tight budget and that due to increased costs of fuel and truck maintenance, it would be able to pay from 5 cents to 25 cents more per bushel of grain because the property which it had purchased contained railroad track which would enable it to store grain in train cars as well as loading grain cars. Glenwood Terminal also admitted it was willing to spend as much as $6,000 to correct a drainage problem which would help the petitioners with their drainage. Evidence was presented to the Board that the road north of the facility would not have a great increase in traffic, but that the road south might have to be widened and strengthened and that if necessary, Glenwood Terminal would use its resources to keep the road in repair. Evidence was also presented that the only noisy equipment at the facility would be a grain drying machine which was to be located at the east end of the facility, which would only operate three to four weeks per year during harvest season, that a crossing guard would be at the railroad during school periods to warn buses of rail traffic, that eventually the area around the facility would be blacktopped to eliminate dust problems, and that the grain bins would be free standing concrete structures. The spokesman for Glenwood Terminal managed a similar facility in Falmouth which was considered to be clean and well operated.

The petitioners argue the evidence is insufficient to support the findings of fact and conclusions of law. They specifically challenge the sufficiency of evidence to support the following findings:

4(c) A large preponderance of the trucking and hauling will be from the south and thus not pass but a part of one of the objectors real estate.

(d) Drainage is presently a problem of the objectors and Glenwood Terminal, Inc. is prepared to spend as much as $6,000.00 correcting its own drainage in such a manner as will help correct the present drainage problems of the objectors; if the County Road from the south to the Glenwood Terminal, Inc. facility has to be widened and strengthened, Glenwood Terminal, Inc. volunteers to keep said road in repair at its expense; further Glenwood Terminal, Inc. as a safety precaution will maintain a crossing guard at the railroad during the school periods to warn school buses of rail traffic.

(e) The only noisy machinery would be a grain dryer located at the east end of the facility which would operate only three to four weeks annually during harvest season; the noise of such dryer located this Board estimates [sic] is no closer than 800 feet from the nearest objector's residence and 1500 feet from the furtherest [sic] objector's residence will not be disturbing to any of the objectors.

(f) The hours of operation of Glenwood Terminal, Inc. will be from 7:00 a.m. to 5:00 p.m. normally and until dark during harvest time thus as a practical matter there will be no noise from either grain hauling or railroad car switching on the B. & O. Railroad passing track disturbing sleep.

(g) There will be no contaminations of water supply by any operation of Glenwood Terminal, Inc.

(h) Mr. William Compton represents Glenwood Terminal, Inc. as co-owner and operator thereof; he also owns Falmouth Farm Supply, Inc., a few miles from the Glenwood Terminal, Inc. project and has been connected with five (5) different grain handling and storage installations; there has never been a problem of any

such facility deteriorating in which Compton has been operating and this Glenwood Terminal, Inc. operation will not be permitted to deteriorate; the grain bins will be concrete structures slip form and free standing; there will be no rodent problem to exist.

(i) Glenwood Terminal, Inc. will in the future blacktop the entire area surrounding the multi-grain handling and storage facility thus eliminating the dust caused by traffic on the Glenwood Terminal, Inc. property.

(j) There will be minimal danger of fire in the operation of Glenwood Terminal, Inc.; if there should be a fire that is not contained, it would be so far removed from any other structures as to constitute no danger to other or others property.

(k) The likelihood is that property values in the immediate community of the Glenwood Terminal, Inc. project will be enhanced rather than devalued and depreciated.

(*l*) There is no question of public morals or morals involved unless the integrity of Glenwood Terminal, Inc. and its personnel is a moral question; if such so be, there is no question of such integrity.

(m) Glenwood Terminal, Inc.'s construction and subsequent operation will promote the general welfare of the Community and is in the best interest of the welfare of the community for reasons stated and to be stated.

The petitioners argue paragraphs 4(c), (e), (f), (g), (j), (k), (*l*), and (m) are not supported by the evidence and they further argue that paragraphs 4(d), (h), (*l*), and (k) are but mere speculation by the Board and the trial court.

■ The same standard of review is applied by this court when examining the determination of a board of zoning appeals regardless of whether the action was brought as a variance or a special exception. This standard provides that the decision will not be reversed unless there is a clear showing of an abuse of discretion, a

lack of substantial evidence to support the decision, or the decision is contrary to law. *Stanley v. Board of Zoning Appeals, Jasper County,* (1972) 152 Ind.App. 418, 283 N.E.2d 809. This standard results because the action is an appeal from an administrative determination. There is a presumption that the determinations of a zoning board are correct and should not be overturned unless they are arbitrary, capricious, or patently unreasonable so as to constitute an abuse of discretion. *Boffo v. Boone Cty. Bd. of Zoning Appeals, supra.*

■ The petitioners have challenged the sufficiency of the evidence to support the Board's findings of fact. We have two standards of review regarding the sufficiency question for determining an abuse of discretion, depending upon whether the board granted or denied the applications. In order to reverse an order of a board which grants a variance, the appellant must show that the quantum of legitimate evidence was so proportionately meager as to lead to the conviction that the finding and decision of the Board does not rest on a rational basis. *Id.*

■ The petitioners argue that the evidence supporting paragraphs 4(c), (e), (f), (g), (j), (k), (*l*), and (m) is insufficient. The argument is essentially an invitation to reweigh the evidence. The spokesman for Glenwood Terminal testified very little truck traffic would come from the north. There was evidence as to where the grain dryer would be located at the facility, and thus, the distances from the petitioners's homes could be calculated. The petitioners contend there is no evidence to support the findings that the noise would not disturb them. Although the record does establish the normal hours of operation would be from 7:00 a.m. to 5:00 p.m. except during harvest season, the petitioners have failed to demonstrate the noise from the grain dryer would be disturbing.[1]

■ The petitioners also claim paragraph 4(g) is also unsupported by the evi-

---

**1.** The petitioners complained about construction noise, not noise from a grain dryer.

dence because no evidence regarding water contamination or lack thereof was ever presented to the Board. Glenwood Terminal did get its septic permit approved. Even though there is no evidence regarding water contamination, any error is certainly harmless because the petitioners admitted there was no contrary evidence. The petitioners submitted evidence that the water supply diminished during construction, but this evidence did not relate to the Glenwood Terminal's operation.

■ The petitioners also contend paragraph 4(j), which found a minimal fire danger, is not supported by the evidence. The petitioners again presented evidence of a fire during construction, but there was contrary evidence that Glenwood Terminal had minimized the danger of fire due to grain accumulation by its construction methods. The evidence submitted by Glenwood Terminal was sufficient to support the finding.

■ The petitioners also challenge the finding that the terminal will enhance the property values in the area. Both sides presented opinions regarding the effect that the terminal would have on property value. The Board's decision to believe Glenwood Terminal does not constitute an abuse of discretion. An administrative agency could determine that a grain facility could enhance the value of adjacent agricultural property. The petitioners have not shown the Board's decision did not rest on a rational basis.

■ The petitioners have challenged the finding contained in paragraph 4(*l*) regarding the integrity of Glenwood Terminal's personnel. They presented evidence that the construction workers had been rude and relieved themselves in the open. Although we have no doubt that these activities disturbed some of the petitioners, there was evidence presented that the facility would be managed by individuals who had worked at the Falmouth facility. The Board could have easily concluded that the moral integrity of these individuals was not subject to dispute. The operation of a grain handling facility is unlikely to involve a threat to public morality. The petitioners have failed to show that this decision did not rest on a rational basis.

■ Paragraph 4(m) consisting of a finding that Glenwood Terminal's facility would promote the general welfare of the community and is in its best interest. The petitioners challenge the evidence supporting this determination because of the increased traffic and health problems of some residents. There was evidence that the facility would result in local farmers being paid 5 cents to 25 cents more per bushel of grain when the facility was completed. This decision is supported by sufficient evidence.

■ The petitioners challenged findings 4(a), (h), (*l*) and (k) as being speculative because the paragraphs deal with future actions to be taken by Glenwood Terminal to alleviate potential problems. The petitioners correctly assert that these paragraphs cannot constitute findings of fact because they are based upon future action.

The petitioners have also challenged other findings as being speculative. These findings deal with the potential of a deteriorating facility, property values, better service for area farmers, the cleanliness of the facility, and how the facility will be operated.

Although these paragraphs are speculative because they are based on future action, the paragraphs indicate that the Board examined potential problems which could exist and solicited possible solutions from Glenwood Terminal. Its spokesman testified as to how Glenwood Terminal's methods of construction and its future plans could alleviate potential problems. These "findings" establish the Board did a thorough job in its examination of this matter.

In summary, the petitioners, in order to succeed on appeal, had to establish that the quantum of evidence was proportionately meager such that it leads to the conclusion that the findings and determinations of the Board do not rest on a rational basis. The record contains contradictory evidence, but

there is sufficient evidence of record to support the findings.

The judgment is affirmed.

NEAL, P.J., concurs.

RATLIFF, J., concurs with separate opinion.

RATLIFF, Judge, concurring.

The majority opinion in its very first paragraph states that Glenwood Terminal applied for a *variance* in order to alter the zoning status of its property from agricultural to commercial so that it could build a grain drying facility. This it could not do. Rush County has an area plan commission and board of zoning appeals. Area boards of zoning appeals are prohibited from granting a variance from a use district or classification by the express terms of the applicable statute. Indiana Code section 36–7–4–918(d).

The majority later states that this matter has been treated as an application for a special exception and that we shall treat it as such. Slip Opinion at 3. If the action of the Board of Zoning Appeals is to be upheld, it must be on the basis that it was dealing with a request for a special exception. The area involved had been rezoned from agricultural to commercial. The use sought by Glenwood Terminal, that of a multi-grain handling facility appears to be an allowable special exception in a commercial district under Code No. 515, Category: Wholesale Farm Products (raw materials) under the Rush County Zoning Ordinance. *See* Ordinance, p. 86. The parties appear to agree that the matter before the Board was the petition for a special exception. Such was within the Board's power to grant upon the meeting of the conditions prescribed by the ordinance. (*See* Ordinance, pp. 67–69). I concur with the majority that the Board's findings and the evidence are sufficient to sustain the granting of the special exception.