CITY OF CROWN POINT, Appellant
(Plaintiff Below),

v.

LAKE COUNTY, Indiana; Board of Commissioners of Lake County, Indiana; Lake County Community Corrections Program, and Lake County Community Corrections Advisory Board, Appellees (Defendants Below).

No. 64S03–8611–CV–975.

Supreme Court of Indiana.

July 31, 1987.

Timothy R. Sendak, Sendak, Sendak & Luke, Bruce A. Lambka, Brown & Chael, co-counsel, Crown Point, for City of Crown Point.

James A. Holcomb, Lucas, Holcomb & Medrea, Merrillville, for Lake County Community Corrections Program and Lake County Community Corrections Advisory Bd.

Edward H. Feldman, Asst. Lake County Atty., Highland, for Lake County, and Bd. of Com'rs of Lake County.

SHEPARD, Chief Justice.

This case requires us to decide whether a county government's property is subject to the zoning authority of the city within which it is located. We conclude that it is.

In 1972, the City of Crown Point annexed territory which encompassed the Lake County Government Center, bringing the Government Center within the boundaries of that county seat. At the time, the City's zoning ordinance declared that all annexed property would be zoned R–1, residential, and that public buildings were not a permitted use in such a zone. However, the public buildings of the Government Center continued to operate on the annexed property as a pre-existing nonconforming use.

The Government Center consists of a Courts Building, County Jail, Juvenile Detention Center, and numerous other buildings housing various County operations. These included a house which had once been used as a residence for the administrator of the hospital located on the grounds and more recently as a residence for the County Sheriff and his family. The house has been used only for residential purposes.

The house, now referred to as the Old Sheriff's Home, has been vacant for some seven years. The County intends to use it for the Community Corrections Program, making improvements to the house as necessary and housing up to fifteen class D felons. Such a use is not permitted on property zoned R–1, though apparently a special use permit would allow it.

The County did not apply for re-zoning or a special permit, and the City sought an injunction. Following a hearing, the trial court denied the injunction, holding that requiring the County to comply with the City's zoning code would impose a duty without express statutory authority and thus violate Indiana's Home Rule Act. We granted the City's petition for transfer pursuant to Appellate Rule 4(A)(10), Ind.Rules of Appellate Procedure. We are grateful to counsel for providing us with excellent briefs.

Disposition of the case requires that we resolve the following issues:

1) Whether requiring the County's compliance with generally applicable City ordinances which are authorized by statute violates Home Rule by improperly imposing a duty for which there is no express statutory authority;

2) Whether the County is estopped from denying the authority of the City zoning code or the City is estopped from enforcing its zoning code against the County, and

3) Whether the County is immune or exempt from the City's zoning code.

### I. Home Rule

Indiana's Home Rule Act, Ind.Code § 36–1–3–1 to –9 (Burns 1981 Repl.), abrogated the traditional rule that local governments possessed only those powers expressly authorized by statute and declared that a local government possesses "[a]ll other powers necessary or desirable in the conduct of its affairs...." Ind.Code § 36–1–3–4(b)(2). However, some powers are specifically prohibited, among them, "[t]he power to impose duties on another political subdivision, except as expressly granted by statute." Ind.Code § 36–1–3–8(3).

As no statute specifically states that one government unit may require that another political subdivision comply with its zoning code, the County argues that the Home Rule Act bars the City's enforcement of its

code against another political subdivision. The City says that the legislature's intent was to grant the City the power to enforce its zoning code against any and all property owners, be they political subdivisions or private citizens.

Thus, the question is whether the statute authorizing City planning and zoning is the kind of "express grant" required by Ind. Code § 36–1–3–8(3) to sustain enforceability against another governmental unit. The City argues that express statutory authorization to perform a specific governmental function is sufficiently explicit and that the power to require compliance of other political subdivisions arises from such a general grant of power.

The General Assembly has given us an indication of its intent: "The policy of the state is to grant units all the powers that they need for the effective operation of government as to local affairs." Ind.Code § 36–1–3–2. Further, "[a]ny doubt as to the existence of a power of a unit shall be resolved in favor of its existence." Ind. Code § 36–1–3–3(b).

Land use control is particularly a local function. Cities or counties may develop a comprehensive land use plan to promote the public health, safety, comfort, morals, convenience and general public welfare. Ind.Code § 36–7–4–501. Specifically, the comprehensive plan may include "[p]ublic buildings and institutions, including governmental administration and service buildings, ... penal and correctional institutions, and other civic and social service buildings." Ind.Code § 36–7–4–503(2)(N). This plan is carried out through local zoning ordinances. Ind.Code § 36–7–4–601— 614 (Burns 1986 Supp.).

The general power to regulate zoning does not specifically include the power to require that other political subdivisions comply with zoning regulations. However, a survey of other statutes granting local authority to perform and regulate government functions shows that *none* of the powers delegated to government units contain explicit authority to require compliance by another political subdivision. Thus, while may "regulate the use of public

ways," Ind.Code § 36–9–2–7, no specific authorization is given to enforce such regulation on any other political subdivision. Though "a municipality that operates sewage works ... may require: (1) Connection to its sewer system of any property producing sewage or similar waste; and (2) Discontinuance of the use of privies, cesspools, septic tanks and similar structures," Ind. Code § 36–9–23–30(a), no specific enforcement is provided against other political subdivisions.

Strict interpretation of the limitation that a unit may not impose a duty on a political subdivision without express statutory authority would lead to the conclusion that counties may not enforce speed zones against city employees and cities may not prohibit counties from dumping raw sewage in rivers and streams. "[A]dherence to such strict letter would lead ... to absurdity." *Zoercher v. Indiana Associated Telephone Corp.* (1937), 211 Ind. 447, 455, 7 N.E.2d 282, 285 (quoting *Stout v. Board of Commissioners* (1886), 107 Ind. 343, 347, 8 N.E. 222, 224).

Counsel for Lake County recognized this difficulty during oral argument before this Court. When asked whether counties had authority to regulate landfills owned by municipalities but located in unincorporated areas, he affirmed that they did—because counties have specific authority to regulate landfills. Of course, this authority derives not from the general powers of counties, Ind.Code § 36–1–3–4, but from the planning and zoning statutes, such as Ind.Code §§ 36–7–4–503 and 36–7–4–601(b).

■ Therefore, we hold that Home Rule Act does not bar units from enforcing against other political subdivisions those regulations of general applicability which are specifically authorized by statute. However, the resolution of this discrete question is not dispositive of the City's power to enforce its zoning requirements against all other governmental entities under all circumstances.

## II. Estoppel

Both the City and the County argue equitable estoppel. Of course, each argues that the other is the party estopped.

The party claiming equitable estoppel must show its "(1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially." *Damler v. Blaine* (1943), 114 Ind.App. 534, 542–543, 51 N.E.2d 885, 889.

The City first raises a claim of estoppel based on the County's history of apparent compliance with the zoning code. For some earlier improvements to the County Government Center, contractors working for the County did obtain work permits from the City. The County even sought a City building permit for the construction of the Juvenile Detention Center in 1976; the City views its approval of this request as "a slip up." As a result of these transactions, the City claims that it was "lulled into a false idea of the County's position regarding the City's authority," and, as a result, "the City was not as vigilant as it should have been."

■ The City concludes that the County's apparent acquiescence and the City's resulting complacency now estop the County from denying the Crown Point's zoning authority. To prevail on this claim, the City would have to show that it lacked knowledge or the means of knowledge of the matter in question. *Id.* at 542, 51 N.E.2d at 889. Estoppel cannot be applied if the facts are equally known by or accessible to both parties. *Advisory Board of Zoning Appeals v. Foundation for Comprehensive Mental Health* (1986), Ind. App., 497 N.E.2d 1089, 1093; *City of Evansville v. Follis* (1974), 161 Ind.App. 396, 403, 315 N.E.2d 724, 728.

■ The City was certainly aware of its own zoning ordinance. It should also have been aware that, while the County complied with some City requirements, the County also built the Juvenile Detention Center in 1976 and the Animal Control Center in 1979 without seeking re-zoning or a special use permit in either instance, though both uses contravened the City zoning ordinance. Thus, the County did not misrepresent its position regarding the City's zoning authority. Construction of the two buildings clearly is sufficient to charge the City with knowledge of the County's past non-compliance with the zoning code.

Moreover, there is no evidence that the City's lack of vigilance arose from its reliance on the County's occasional application for a City building permit. The County's compliance was sporadic at best, and there is no indication that the County occasionally applied for a building permit with the intention of misleading the City into a false sense of security. It appears equally likely that the City's lack of vigilance arose from confusion within the City government. When questioned about the lack of building permits for the Animal Control Center, a county contractor explained that "some lady at the City" said the Animal Control Center was a government job and the County should handle that.

The City did not suffer from a lack of knowledge about County activity, nor did it act or fail to act in reliance on the County's conduct. Thus, the County is not estopped from denying the City's zoning authority.

In advancing its own estoppel argument, the County claims that the City's failure to enforce its zoning ordinances against construction of the Juvenile Detention Center and the Animal Control Center precludes it from doing so now as to the Community Corrections Center.

■ Ordinarily, equitable estoppel cannot be applied against government entities. *State v. Hendricks Superior Court* (1968), 250 Ind. 675, 678, 235 N.E.2d 458, 460. However, application of estoppel is not absolutely prohibited. *Advisory Board of Zoning Appeals* 497 N.E.2d 1089, 1092. When the public interest would be threatened by the government's conduct, estoppel will be applied to bar that conduct. *Hendricks Superior Court,* 250 Ind. at 678, 235 N.E.2d at 460; *Advisory Board of Zoning Appeals,* 497 N.E.2d at 1092; *Cablevision of Chicago v. Colby Cable Corp.* (1981), Ind.App., 417 N.E.2d 348, 357. Estoppel has been found appropriate in circumstances which do not involve the unau-

thorized use of taxpayers' funds, where limitations on government authority are not clear, and when estoppel is consistent with the government's interest. *Cablevision,* 417 N.E.2d at 354.

Moreover, even if estoppel were appropriate under the public interest exception, the County has not relied to its detriment on the City's past failures. Though the County budgeted approximately $18,-000 for renovation of the Old Sheriff's Home, the work had not begun when this case was submitted to the trial court, and the parties agreed to a temporary injunction during the pendency of the litigation. While the County subsequently commenced operation of the Community Corrections Center at the site, it did so as a result of the trial court's ruling, and not in reliance on acquiescence by the City, which has steadfastly opposed the Center since its inception.

In fact, it appears that neither party has acted in reliance on the misrepresentation or concealment of a material fact by the other. Indeed, each party has acted with complete disregard for the clearly stated position of the other. Estoppel does not apply to either party.

### III. County Immunity from Zoning Code

Aside from its claim under the Home Rule Act, the County argues that its statutory authority to establish Community Correctional Centers prevails over the statutory authority of the City to regulate land use.

While this Court has not encountered this dilemma before, courts in other jurisdictions have relied primarily on three different tests to resolve a conflict between a local zoning authority and an intruding government entity which seeks to avoid zoning regulation. First, the traditional governmental-proprietary test has been applied to give governmental entities pursuing government functions immunity from local zoning laws, while requiring compliance of those entities performing merely proprietary functions. Second, the superior sovereign rule recognizes immunity for those governmental entities with a superior position in the governmental hierarchy. Finally, the eminent domain test grants immunity to any government unit which has the power to take property by condemnation. 5 Rohan, *Zoning and Land Use Controls* § 35.05 (1987).

These traditional tests have encountered a great deal of criticism. The application of the governmental-proprietary test has led to inconsistent results. Because the definitions of governmental and proprietary vary, the same function may be classified differently depending on the jurisdiction, or may vary even within the same jurisdiction. *Blackstone Park v. State Board of Standards and Appeals,* 448 A.2d 1233, 1238 (R.I.1982); Note, *Governmental Immunity from Land Zoning Ordinances,* 84 Harv.L.Rev. 869, 870 (1971). The governmental-proprietary distinction arose in the context of governmental immunity from tort claims and is not related to the central question of land use control. *City of Fargo v. Harwood Township,* 256 N.W.2d 694, 696 (N.D.1977).

The eminent domain test has likewise been developed for a different though related purpose, namely, deciding whether a public body may acquire ownership of private property.

> Cases which have applied this test generally take the position that where a political unit is authorized to condemn, it is automatically immune from local zoning regulations when it acts in furtherance of its designated public function. Yet, the power to condemn simply provides a method whereby property can be acquired. Such power has nothing to do with the use of the property.

*City of Temple Terrace v. Hillsborough Association for Retarded Citizens, Inc.,* 322 So.2d 571, 578 (Fla.Dist.Ct.App.1975).

The superior sovereign test presents the difficulty of attempting to establish a meaningful hierarchical ranking. Note, *Governmental Immunity from Zoning,* 22 B.C.L.Rev. 783, 790 (1981). "Since a municipal corporation is an agent of the state whose zoning power is governed by the legislature, its interest in enforcing this

power is equal to the state agency's interest in performing those functions for which it was formed." 8 McQuillan, *Municipal Corporations* § 25.15, at 20 (3d ed. rev'd. 1983). Attempting to label one government entity "superior" merely begs the question of which agent of the sovereign should prevail on the issue of land use. Note, *Government Immunity from Land Zoning Ordinances*, 84 Harv.L.Rev. at 877. Though we find the notion of sovereign immunity unhelpful in resolving disputes between local governments, a case in which the state government itself is involved might well be resolved on this basis.

These traditional tests attempt to resolve zoning conflicts by applying labels which bear little, if any, relationship to the underlying concerns of land use control. "More generally, all three traditional tests share a common flaw; they are overly simplistic and often lead to resolution of a multifaceted zoning-conflicts issue through the use of conclusive labels rather than through perceptive adjudication." *Blackstone Park*, 448 A.2d at 1238. Moreover, use of these three tests has invariably led to the same result: government entities are immune from zoning ordinances. Note, *Government Immunity from Zoning*, 22 B.C.L. Rev. at 785.

We conclude that these tests do not provide a basis for determining that Lake County is immune from Crown Point's zoning ordinance.

The modern trend in resolving governmental zoning conflicts is to apply the balancing of interests test. *See* 5 Rohan, *Zoning and Land Use Controls* § 35.05 (listing those jurisdictions which have adopted such a test). The balancing of interests has generally consisted of a two-tiered analysis. The first step is to determine of whether the intruding authority is immune from the local zoning authority. If the intruding entity is immune, it may make the initial land use decision without complying with local zoning. If not immune, the intruding entity must attempt compliance with local zoning, thus giving the local zoning authority the initial land use decision. The second tier of the balancing test

requires a determination of the reasonableness of the initial land use decision.

We note that courts in other jurisdictions have used three methods in conducting this balancing of interests analysis.

The test originally evolved as a method for determining legislative intent.

> The rationale which runs through our cases and which we are convinced should furnish the true test of immunity in the first instance, albeit a somewhat nebulous one, is the legislative intent in this regard with respect to the particular agency or function involved. That intent, rarely specifically expressed, is to be divined from a consideration of many factors, with a value judgment reached on an overall evaluation.

*Rutgers, State University v. Piluso*, 60 N.J. 142, 152, 286 A.2d 697, 702 (1971) (footnote omitted).

Thus, while acknowledging that legislative intent in this regard is rarely specifically expressed, the court in *Rutgers* answered the preliminary immunity question by examining considerations suggested by the legislation. These factors included "the nature and scope of the instrumentality seeking immunity, the kind of function or land use involved, the extent of the public interest to be served thereby, the effect local land use regulation would have upon the enterprise concerned and the impact upon legitimate local interests." *Id.* at 152, 286 A.2d at 702. In essence, the court attempted to determine what the legislature would have done had it considered the question.

The *Rutgers* court addressed the reasonableness of the land use decision primarily in procedural terms: "the instrumentality ought to consult with the local authorities and sympathetically listen and give every consideration to local objections, problems and suggestions in order to minimize the conflict as much as possible." *Id.* at 154, 286 A.2d at 703. Beyond this, the test is arbitrariness.

Other courts have emphasized the reasonableness of the land use decision rather than a search for statutory guidance. There is danger in seeking legislative in-

tent where none has been expressed. Where the legislature's words do not suggest an intent, courts have been reluctant to divine one. "As it turns out, there is no legislative guidance [on the question of immunity].... It is more likely that the legislature didn't express itself on the subject because it wasn't thinking about the problem." *Temple Terrace*, 322 So.2d at 578.

The *Temple Terrace* court disallowed any claim of immunity absent express statutory authorization. The court did, however, indicate that the balancing of interests test would be applied to determine the reasonableness of the land use. Absent statutory immunity, "the governmental unit seeking to use land contrary to applicable zoning regulations should have the burden of proving that the public interests favoring the proposed use outweigh those mitigating against a use not sanctioned by the zoning regulations of the host government." *Id.* at 579. However, because the intruding state agency in *Temple Terrace* had never applied to the city for a zoning variance, the court did not address the merits of the zoning issue.

Yet a third method of balancing conflicting interests was adopted in *City of Fargo*, 256 N.W.2d 694. In that case, the court allowed the intruding city to assert a claim of immunity absent specific statutory immunity. In advancing such a claim, the burden was on the city seeking exemption from the zoning ordinance. The court considered factors surrounding the particular land use in question, such as the city's failure to study suitable alternate sites, the availability of equally suitable land, the adverse impact on the neighborhood, and the proposed site's unique suitability for its zoned use. The court concluded that the city had not born its burden to show sufficient necessity or adequate study of alternatives. The court indicated that it would have reviewed any appeal from a denial of a conditional use application on grounds of bias or arbitrariness, an approach similar to the one used in *Rutgers*. Because the pending appeal was from a determination of immunity, the court did not engage in this analysis.

We summarize these three approaches to the balancing of interests test as follows. The *Rutgers* approach allows governmental immunity from local zoning if it appears from the evaluation of legislative factors that the legislature would have intended the government entity to be immune, while evaluating the reasonableness of the land use on a basis of arbitrariness. The *City of Fargo* test also allows for governmental immunity if the intruding entity can show necessity for the particular land use and also looks to the arbitrariness of the final decision to determine reasonableness. The *Temple Terrace* approach, on the other hand, allows immunity only if expressly authorized by statute, thus allowing the preliminary land use decision to be made by the local zoning authority and reviewing the reasonableness of that decision by balancing the public interests.

█ We conclude that an intruding entity must be allowed to seek relief under some circumstances. It must, however, bear the burden to show that immunity is necessary to advance the governmental ends it seeks. The essential purpose of zoning, "to rationally coordinate land-use planning to promote orderly development and preservation of property values," *City of Fargo*, 256 N.W.2d at 697, generally can best be furthered by local zoning authorities which have been established to accomplish that very purpose. Local zoning proceedings also provide for public public debate in an administrative hearing which can address the interests of all parties.

However, there will be occasions when the land use plan of a community must fall before other critical government objectives. The decisions of local zoning boards in any context have been reviewed to determine if they are arbitrary, capricious or patently unreasonable. *Ash v. Rush County Board of Zoning Appeals* (1984), Ind.App., 464 N.E.2d 347. Local land use decisions must be evaluated not only in terms of local need and benefit, but in light of community, area or state-wide interests as well.

█ When a zoning authority has denied an intruding government's request for approval of a given land use, an appeal can lie

to the courts, which will balance the interests to determine which must prevail. Factors to be considered include the propriety of the land use, such as the economic and environmental impact on the area, the kind of function or land use involved, the availability of alternative locations, and any attempts to minimize detriments to adjacent landowners, as well as a consideration of competing interests, such as the nature and scope of the intruding government unit, the essential use to the local community and the broader community, the need for the specific site as compared to the adverse impact, the social utility of the proposed use, and the possible frustration of a government function. These are the sort of decisions assigned to local executive and legislative bodies. Where their determinations are irreconcilable, the legislature has provided for a review of the zoning decision by the judiciary.

Here, the County never sought re-zoning or a special use permit and the litigation commenced as a request by Crown Point for an injunction. The trial court denied the injunction on the basis of the Home Rule Act. As we hold that the Home Rule Act does not bar an injunction, the trial court is ordered to vacate its denial of the City's petition. Whether injunctive relief is appropriate pending an application by Lake County for rezoning or a special use permit, we leave to the discretion of the trial court. The cause is remanded for that purpose.

DeBRULER, GIVAN, PIVARNIK and DICKSON, JJ., concur.